(824 P.2d 991)
No. 66,054

MARK DEAN GODDARD, *Appellant*, v. KANSAS DEPARTMENT OF CORRECTIONS, *Appellee.*

Opinion filed January 10, 1992.

*Stephen W. Kessler,* of Legal Services for Prisoners, Inc., for the appellant.

*Linden G. Appel,* special assistant attorney general, and *Robert T. Stephan,* attorney general, for the appellee.

Before PIERRON, P.J., LARSON, J., and C. FRED LORENTZ, District Judge, assigned.

PIERRON, J.: This is an appeal of a denial of a writ of habeas corpus. The appellant in this case asserts that he has a liberty interest in receiving a recommendation for a sentence modification from the Secretary of Corrections. The appellant asserts that this protected liberty interest was created by the Kansas Department of Corrections Internal Management Policy and Procedure No. 011-114.

The appellant is incarcerated in the custody of the Kansas Secretary of Corrections. He was convicted of the sale of cocaine, a class C felony, and the attempted possession of cocaine, a class D felony. The beginning date of his incarceration was February 5, 1988, and his controlling sentence is 8 to 20 years. In April

1990, the appellant submitted to the Osawatomie Correctional Facility Program Management Committee a request for modification of his minimum sentence pursuant to K.S.A. 1989 Supp. 21-4603(4).

In his letter requesting a modification of his sentence, the appellant details how he has changed since he has been in prison, how he has taken advantage of available programs and mental health counseling, and how no further programs or counseling are available that would be of benefit to him. He suggests that he is no longer a threat to the public, has shown a sincere desire to abide by the law, and has been fully rehabilitated. In addition to his letter, the appellant submitted a supporting letter from the social worker who has been responsible for his counseling.

In his letter requesting a modification of his sentence, the appellant asserts that the Department of Corrections has established criteria to use in applying 21-4603(4) in its Internal Management Policy and Procedure No. 011-114 (hereinafter I.M.P.P. 011-114). This Internal Management Policy and Procedure of the Department of Corrections is the subject of this appeal.

The appellant pursued a recommendation for sentence modification because he believed he met 9 of the 12 criteria that would support such a recommendation. It is the appellant's belief that the I.M.P.P. only requires an inmate to meet 2 of the 12 criteria in order to receive a recommendation for sentence modification. The appellant's request for a recommendation of sentence modification met with no success at the program review level. The program classification committee members denied the appellant's request for a recommendation of sentence modification, stating that his sentence was "not of a nature to be considered for a sentence reduction" and that his "sentencing was not of an extraordinary nature."

The appellant filed a grievance, which was denied by the institutional director for the Osawatomie Correctional Facility on May 23, 1990. The conclusions made by the Director were:

"The comments of Corrections Counselor Marsh and Captain Sled on the inmate's Program Review indicate that they do not consider the inmate to be an appropriate candidate for a recommendation for sentence modification. If they felt that he was only then would they be required to utilize the criteria and demonstrate why."

The comments of Corrections Counselor Marsh and Captain Sled were "use of the statute is to be for cases of 'extraordinary nature. and shall be exercised sparingly.' "

The appellant filed an appeal of that grievance denial with the Secretary of Corrections. That appeal was denied on May 31, 1990, when the Secretary said that he concurred with the Principal Administrator's response. Thereafter, on July 9, 1990, the appellant filed a petition for writ of habeas corpus with the District Court of Miami County pursuant to K.S.A. 60-1501. On December 19, 1990, the district court denied the petition for writ of habeas corpus after a hearing.

The appellant has timely appealed, raising the same issues to this court. The first issue is whether the State has created a liberty interest protected by the Fourteenth Amendment to the United States Constitution by enacting 21-4603 and authorizing the Secretary to promulgate I.M.P.P. 011-114. The second issue is, if such a liberty interest has been created and due process must be accorded to that interest, was the action taken by the Kansas Department of Corrections arbitrary and capricious and a denial of the constitutional process due appellant?

The Fourteenth Amendment prevents any state from depriving any person of life, liberty, or property without due process of law and protects him or her from arbitrary action of the government. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 459-60, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989). The United States Supreme Court has determined that procedural due process questions must be examined in two steps. Step No. 1 requires asking whether or not there exists a liberty or property interest which has been interfered with by the state, and Step No. 2 requires an examination of the procedures that were attendant upon that deprivation to determine if they were constitutionally sufficient.

"The types of interest that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire,' [citation omitted] and must be based on more than 'a unilateral hope,' [citation omitted]. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources—the Due Process Clause itself

and the laws of the States.' [Citation omitted.]" *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. at 460.

Kansas has ruled that the Kansas parole statute does not give rise to a liberty interest when the matter before the board is the granting or denial of parole to one in custody. *Gilmore v. Kansas Parole Board,* 243 Kan. 173, 180, 756 P.2d 410 (1988).

While the United States Supreme Court acknowledged in *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979), that there is no constitutional right of a convicted person to be released before the expiration of his sentence, the Supreme Court has recognized that some state laws have created enforceable liberty interests in the prison setting. In *Greenholtz,* the Court held that despite the subjective nature of the parole release decision, the Nebraska statute in question was written in such a way that it created an expectancy of release which was a liberty interest that was entitled to the protection of the United States Constitution. *Greenholtz,* 442 U.S. at 12.

Recently in *Board of Pardons v. Allen,* 482 U.S. 369, 381, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987) the Supreme Court recognized that the Montana statute concerning parole was written in such a way that the mandatory language gave rise to a constitutionally protected liberty interest.

There were two amendments to 21-4603 which passed in the 1989 legislative session with significant wording differences. Both amended versions appear in the 1989 Supplements to the K.S.A. However, legislative history reveals that K.S.A. 1989 Supp. 21-4603 was approved April 25, 1989, and superseded K.S.A. 1989 Supp. 21-4603c, which was approved April 18, 1989. L. 1990, ch. 92, § 2; L. 1990, ch. 95, § 5.

K.S.A. 1989 Supp. 21-4603(4) reads as follows:

"The court *shall* modify the sentence at any time before the expiration thereof when such modification is recommended by the secretary of corrections unless the court finds that the safety of the public will be jeopardized and that the welfare of the inmate will not be served by such modification." (Emphasis added.)

Although 21-4603 was amended three times by the 1990 legislature, the portion of the statute codified as K.S.A. 1990 Supp. 21-4603(5) remains essentially the same as that quoted above:

"The court *shall* modify the sentence at any time before the expiration thereof when such modification is recommended by the secretary of corrections unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification." (Emphasis added.)

It seems reasonably clear that K.S.A. 1989 Supp. 21-4603(4) and K.S.A. 1990 Supp. 21-4603(5) are sufficiently similar to the statute at issue in *Greenholtz*, 422 U.S. 1, that such statute may well be found to create a liberty interest. If either statute does create a liberty interest then it is dependent upon the recommendation of the Secretary of Corrections for a sentence modification. The statute does not direct the court to modify the sentence unless such a recommendation from the Secretary of Corrections has been received.

In the instant case, the appellant was not able to acquire such a recommendation of sentence modification from the Secretary of Corrections and has asserted that he has a liberty interest in receiving that recommendation. He contends I.M.P.P. 011-114 is written in sufficiently mandatory language that a liberty interest in receiving a recommendation for sentence modification is created. Therefore, the central issue in this case is whether the I.M.P.P. creates a liberty interest entitled to due process protection.

The United States Supreme Court, in recognizing that certain state regulations have created liberty interests in parole, in good time credits, in freedom from involuntary transfer to a mental hospital, and in freedom from more restrictive forms of confinement within the prison, has stated:

"The fact that certain state-created liberty interests have been found to be entitled to due process protection, while others have not, is not the result of this Court's judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. at 461.

The United States Supreme Court enunciated the following test to determine whether a liberty interest was created by state statutes or regulations.

"Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.' [Citation omitted.] A State may do this in a number of ways. Neither the drafting of regulations nor their interpretation can be reduced to an exact science. Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision making, [citation omitted] and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. at 462.

With that test in mind we must examine the language of I.M.P.P. 011-114 to determine if it has placed substantive limitations on official discretion and whether it mandates an outcome to be reached upon a finding that certain criteria have been met. It will be helpful to compare the language of the I.M.P.P. with the language of other state statutes and regulations that have been examined by the Supreme Court to determine whether a liberty interest had been created.

I.M.P.P. 011-114 is seven pages long. In its policy section, it states: "The discretion conferred upon the Secretary of Corrections by [K.S.A. 21-4603(4)] is deemed to be of an extraordinary nature and shall be exercised sparingly based on criteria set out in this policy and procedure."

Following the policy section is a discussion section, where it is explained that these actions for sentence modification recommendations should be "initiated by those who work directly with the inmate and should be well supported by testimony and documentary evidence." It also states that "[n]ormally a combination of two or more specific reasons" should support the recommendation.

The following procedures section sets out that the director of each facility should generally be the initiator for a recommendation to the Secretary of Corrections. Paragraph 2 of the procedure section states:

"In all cases it shall be required that the modification of this sentence will benefit the inmate in terms of long range and substantial rehabilitation and will not jeopardize the best interest of the public, especially the interest of public safety. Other factors to be considered in making a recommendation of the sentence shall be as follows: . . . ."

Paraphrased, the factors to be considered are: (a) that the inmate has taken advantage of available counseling and programs;

(b) that the record of the inmate's behavior and attitudes indicates a likelihood the inmate can successfully live in society; (c) that the old criminal code punishment does not conform with what would be imposed for a similar offense under the new criminal code; (d) that parole eligibility is established and controlled by statute, and it is not possible for a direct recommendation by the Secretary of Corrections or an adjustment by the Kansas Parole Board to change that parole eligibility date; (e) that the court has since changed its approach in sentencing for this particular crime or there has been a miscalculation in this particular sentence; (f) that an inmate may need special medical or psychiatric treatment which would require a parole to a special treatment center; (g) that the inmate is terminally ill; (h) that the inmate does not qualify for participation in federal programs or work release because of his or her parole eligibility date; (i) that the inmate has suffered a reasonable punishment, which is set out as no less than 10 years for a minimum life sentence, no less than 7 years for a minimum 30-year sentence, or no less than 5 years for a minimum 20-year sentence; (j) that a fundamental change in the inmate has incurred which essentially is that he or she has been rehabilitated; (k) the likelihood that further incarceration will have a regressive effect rather than a helpful effect on the inmate's rehabilitation; and (l) that the safety of the public, respect for the criminal law, and the social and family support available to the inmate, etc., indicate that it would be good correctional practice to recommend a sentence modification.

Paragraph 3 of I.M.P.P. 011-114 is somewhat difficult to interpret. It states as follows:

"Except for those cases where the recommendation is based primarily on factors numbered c, e, f, g and h in paragraph 2, a recommendation for a modification of the sentence shall be used only in those cases where the record of the inmate shows that the original sentence as imposed is not currently appropriate based upon factors a, b, d, i, j, k, or l considered under paragraph 2."

It would appear the discretion conferred upon the Secretary of Corrections in making the decision whether or not to recommend a sentence modification is to be based on the criteria that is set out in paragraph 3 according to the policy statement of I.M.P.P. 011-114. While the discussion section indicates that

at least two or more reasons shall be present to support a recommendation, it does not imply that when an inmate has met at least two criteria, he or she should receive a recommendation for sentence modification. The procedure section states it is mandatory that a modification has been determined to benefit the inmate in terms of long range and substantial rehabilitation and that modification must not jeopardize the best interests of the public, including public safety, and it lists factors a through l that must be considered in making a recommendation for modification of the sentence.

The use of the words "shall be used only in those cases" in paragraph 3 indicates that the Secretary of Corrections should only consider a recommendation when the inmate has been rehabilitated as demonstrated by those factors. It does not seem to indicate that when those factors indicate rehabilitation, a recommendation should be issued at that point. Wording which would indicate that would be, for instance, "a recommendation for a modification of the sentence shall be made when . . . ."

Paragraph 3 does not dictate that the Secretary must make a favorable recommendation after certain events have occurred. It instructs the Secretary that such a recommendation may be made only after certain events have occurred.

I.M.P.P. 011-114 appears to be quite similar to the provisions at issue in *Kentucky Dept. of Corrections v. Thompson.* In that case the Supreme Court acknowledged that the regulations and procedures provided certain "substantive predicates" to guide the decision maker, but found that the

"regulations at issue here, however, lack the requisite relevant mandatory language. They stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met. The Reformatory Procedures Memorandum begins with the caveat that 'administrative staff reserves the right to allow or disallow visits,' and goes on to note that 'it is the policy' of the reformatory 'to respect the right of inmates to have visits.' [Citation omitted.] This language is not mandatory. Visitors *may* be excluded if they fall within one of the described categories [citation omitted], but they need not be. Nor need visitors fall within one of the described categories in order to be excluded. The overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions. Or, to state it differently, the regulations are not worded in such a way that an inmate could reasonably expect to enforce them against

the prison officials." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 456 n. 1, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989). .

*Kentucky Dept. of Corrections* makes clear that the test used by the Supreme Court is two-part. First, are there criteria or substantive predicates which limit the discretion of the decision maker? And, second, does the use of explicitly mandatory language in connection with the establishment of certain criteria force a conclusion that once the criteria are met, a certain result must follow? It seems clear that the criteria established in the I.M.P.P. meets the first prong of this test. Does it also have language that is sufficiently mandatory that it, in essence, tells the decision maker what to do once the criteria have been met? Such sufficiently mandatory language was found in the Montana statute regarding parole by the Court in *Board of Pardons v. Allen.* The language read as follows:

" 'Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community . . . .

" '(2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.' Mont. Code Ann. § 46-23-201 (1985) (emphasis added.)." *Board of Pardons v. Allen,* 482 U.S. 369, 376-77, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987).

Another instance in which the court found the language was sufficiently mandatory to find a particular result once the criteria had been met, was in the celebrated *Greenholtz* case where the Nebraska parole statute was found to create a protected expectation of parole. The relevant statutory language read as follows:

" 'Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

(a) There is a substantial risk that he will not conform to the conditions of parole;

(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or

(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.' Neb. Rev. Stat. § 83-1,114(1) (1976)." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 11, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979).

In *Hewitt v. Helms,* 459 U.S. 460, 476, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983), the Supreme Court found that the language used in the Pennsylvania statute was also sufficiently mandatory to create a protected liberty interest in remaining in the general prison population.

In contrast, the Supreme Court found in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 466, 69 L. Ed. 2d 158, 101 S. Ct. 2460 (1981), that no liberty interest was created because "[t]he Connecticut commutation statute, having no definitions, no criteria, and no mandated 'shalls,' creates no analogous duty or constitutional entitlement." Again, the unfettered discretion allowed state decision makers in Hawaii regarding whether or not inmates should be subject to interstate transfers supported the Court's decision that there was no protected liberty interest because there were no substantive limitations on official discretion. "An inmate must show 'that particularized standards or criteria guide the state's decision makers.' " *Olim v. Wakinekona,* 461 U.S. 238, 249, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983).

While both of those cases lack any criteria whatsoever to guide the decision maker, *Kentucky Department of Corrections* makes clear that criteria can exist to guide the decision maker. 490 U.S. at 464-65. But without mandatory language that forces a specific result as a result of meeting the criteria, both prongs of the test are not met and a constitutionally protected liberty interest is not created. While the word "shall" is heavily used in I.M.P.P. 011.114, a fair reading of it does not support the contention that the Secretary of Corrections must make a recommendation for sentence modification upon a finding that certain criteria have been met. Rather, a fair reading of it indicates that the unit team shall make recommendations to the director of the facility who shall make recommendations to the Secretary of Corrections. Presumably, all of these people should base their recommendations on the criteria that are set out in the I.M.P.P. There must be at least two criteria which have been met before a recommen-

dation can be made unless there are certain specified circumstances such as the terminal illness of an inmate.

It would seem that the most plausible interpretation of I.M.P.P. 011-114 is that it gives the Director or the Secretary guidelines that must be met before they can consider making a recommendation. This is quite different from setting forth criteria which, once it has been met, forces the Secretary of Corrections to make a recommendation for sentence modification. The latter would be in direct conflict with the policy of the statement: "[T]he discretion conferred upon the Secretary of Corrections by this statute is deemed to be of an extraordinary nature and shall be exercised sparingly based on criteria set out in this policy and procedure."

In that the applicable statutes and regulations do not create the liberty interest claimed by the appellant, we need not address the issue of whether he was denied due process in not receiving it.

Affirmed.