**Jerry D. DYE, Petitioner,**

v.

**KANSAS STATE SUPREME COURT, Respondent.**

No. 92–3343–DES.

United States District Court,
D. Kansas.

Sept. 8, 1993.

Wendell Betts, Frieden, Haynes & Forbes, Topeka, KS, for petitioner.

Kyle G. Smith, Kansas Bureau of Investigation, Topeka, KS, for respondent.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate in the Lansing Correctional Facility, Lansing, Kansas, was originally convicted of possession of marijuana, possession of cocaine and possession of drug paraphernalia.

In this action, petitioner challenges his conviction and claims that the Kansas Supreme Court violated his constitutional right to due process when it, sua sponte, recalled the Kansas Court of Appeals mandate which had reversed petitioner's convictions. The Kansas Supreme Court subsequently reversed the court of appeals and reinstated petitioner's convictions for possession of cocaine and possession of marijuana.

Having reviewed the record and conducted oral argument on the issues, the court makes the following findings and order.

## PROCEDURAL AND FACTUAL BACKGROUND

The procedural background in this case is, at best, bizarre. Because petitioner's claim rests on the procedural posture of the case, considerable detail is necessary to understand both the context of the claim and, ultimately, this court's decision.

Petitioner was convicted on November 17, 1989. On June 14, 1991, the Kansas Court of Appeals reversed petitioner's convictions holding that the search warrant was fatally

defective, that evidence seized from petitioner's person pursuant to the warrant and statements made by petitioner subsequent to the search were erroneously admitted into evidence. —— Kan.App. ——, 814 P.2d 43 (1991).

The State of Kansas, appellee, filed a timely Petition for Review to the Kansas Supreme Court.[1] Petitioner filed a Response to Appellee's Petition for Review on July 24, 1991.

On September 4, 1991, the Kansas Supreme Court issued an Order which read: PETITION FOR REVIEW BY APPELLANT, JERRY DYE. DENIED.

On September 9, 1991, the Kansas Court of Appeals Mandate, reversing petitioner's convictions, was issued. The State of Kansas did not file a motion for reconsideration or make any written request concerning the denial of its Petition for Review. On September 16, 1991, the Labette County District Court received the mandate reversing the convictions.

On October 1, 1991, sua sponte, Chief Justice Richard W. Holmes issued an ORDER RECALLING MANDATE. The ORDER read:

> The Supreme Court hereby recalls the mandate issued on September 9, 1991. The order dated September 4, 1991 denying appellee's petition for review of the decision of the Court of Appeals was entered in error. The appellee's petition for review is hereby granted, and the parties are directed to proceed in accordance with Supreme Court Rule 8.03(b). The case will be set for argument on the December docket.

On October 18, 1991, petitioner filed a Motion to Dismiss State's Petition for Review and Reissuance of the Appellate Court Mandate. The Kansas Supreme Court denied that motion on November 5, 1991. No hearing was conducted prior to the denial and no reasons were given for the denial.

On December 5, 1991, the Kansas Supreme Court heard oral argument on the substantive merits of the case. Although the record is unclear, counsel apparently was allowed some argument on the reversal of the denial of the petition for review at this December 5, hearing.

On February 5, 1992, the Kansas Supreme Court reversed the Kansas Court of Appeals and reinstated petitioner's convictions for possession of marijuana and cocaine. 250 Kan. 287, 826 P.2d 500. Petitioner filed a motion for rehearing or reconsideration which was denied on March 10, 1992.

Petitioner commenced this action on September 21, 1992.

Respondent filed an Answer and Return on December 10, 1992. On January 21, 1993, this court granted petitioner's motion for the appointment of counsel.

On July 13, 1993, the court issued a Memorandum and Order setting the matter for oral argument on August 27, 1993. In that Memorandum and Order, the court instructed the parties to file written briefs with the court ten days prior to the argument. The Court specifically asked the parties to address:

1. the jurisdiction of the Kansas Supreme Court to withdraw, sua sponte, a validly issued mandate of the Kansas Court of Appeals;

2. the finality of such a mandate issued pursuant to Kansas Supreme Court Rule 8.03(b);[2]

3. if the October 1, 1991 sua sponte order was only for correction of a clerical error, as the respondent contends, what time limits are placed upon the court in which to make such corrections which result in the granting of a previously denied petition for review;

4. whether the petitioner's constitutional right to due process of law was violated by the action of the Kansas Supreme Court;

5. relevant statutory and case law; and,

---

1. Any party aggrieved by a decision of the court of appeals may petition for review to the Kansas Supreme Court. K.S.A. 20–3018(b).

2. Rule 8.03 was modified April 15, 1992. However, 8.03(b) was operative at the time petitioner's case was before the Kansas Supreme Court.

6. what is the appropriate remedy.

## DISCUSSION

It is a general rule of law that once a mandate issues from an appellate court, that court is divested of jurisdiction. This is so because jurisdiction has been revested in the lower court giving it the power to implement the mandate. Usually the issuance of a mandate means the end of litigation. *Greater Boston Television Corporation v. F.C.C.*, 463 F.2d 268, 277 (D.C.Cir.1971). Therefore the power to recall a mandate should be exercised sparingly and only on a showing of good cause. *Johnson v. Bechtel Associates Professional Corp.*, 801 F.2d 412, 416 (D.C.Cir.1986). It is contemplated that the inherent power of an appellate court to recall a mandate should only be exercised in exceptional circumstances. *Id.* Those circumstances include: correction of clerical errors and clarification of the mandate; fraud on the court; avoidance of different results to cases pending at the same time; need to revise unintended instructions to trial court that produces unintended unjust results; other grounds of injustice; and newly discovered evidence. *Greater Boston Television*, supra at 276–280. See K.S.A. 60–260. It is implicit in both the general rule and the statute that the court recalling the mandate will document the reason for the recall. Here the Kansas Supreme cited no reason for the recall, other than stating that an error had occurred.

A further complication is that the supreme court did not recall its own mandate, but the mandate of the court of appeals. Generally, the final decision of an intermediate appellate court when not reviewed by a higher court has the same finality as that of the highest court. *Tucson Gas & Electric Company v. Superior Court*, 9 Ariz.App. 210, 450 P.2d 722, 724–25 (1969). If final decisions, whether they be unappealed trial court decisions or intermediate court decisions for which review by a higher court has been denied, are not given finality, the judicial process will be defeated. *Id.* at 725.

When the petition for review was denied and the mandate of the court of appeals issued, under the general rule the Kansas Supreme Court was without jurisdiction to recall that mandate without a showing of exceptional circumstances.

Public policy demands that litigation cease at some point in time. In Kansas, the end of litigation occurs when a petition for review is denied, the court of appeals decision becomes final and the mandate issues. The ability of the Kansas Supreme Court to determine a litigant's rights passes beyond its control once the mandate issues. *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, 618 P.2d 778, 784 (1980).

By the supreme court's own rules, a decision of the Kansas Court of Appeals automatically becomes final on the date the Kansas Supreme Court denies a petition for review. Kansas Supreme Court Rule 8.03(b) provides in relevant part:

> If review is refused, the decision of the Court of Appeals shall be final as of the date of refusal and the mandate of the Court of Appeals shall be issued by the clerk forthwith.

Under this rule, the decision of the court of appeals in this case became final on September 4, 1991. See K.S.A. 60–2106 (statutory provision giving the supreme court authority to provide by rule when a decision becomes final). At that point absent a timely petition for rehearing by the state, the matter was closed.[3] The record clearly shows that the state did not file a motion for rehearing.

Throughout the course of these habeas corpus proceedings, the state has argued that what occurred in petitioner's case was a clerical error and that the Kansas Supreme Court was only correcting that error when it recalled the mandate and reversed its decision denying the petition for review.

The state's position is that the order denying review is a nullity on its face because it misnames appellant, Jerry Dye, as the peti-

---

**3.** Under Rule 8.03 at the time petitioner's case was before the supreme court, a party could move for a rehearing of the denial of the petition for review. Under the current rule, a motion for rehearing is not allowed.

tioner for review. In the state's view, the supreme court intended to grant the review and just made a clerical error. The state has never quite explained the nature of the clerical error. Was the error in the naming of petitioner, in the misuse of the term appellant, or in the wrong directive "DENIED."

■ The court is not persuaded by the state's argument. While the law is clear that clerical errors or mistakes can be corrected at any time, what constitutes a clerical error is this case is open to question. Clerical errors "include typographical errors, incorrect statute numbers, failure to include a statute number, failure to state additional true matters, ... [and] are correctable by nunc pro tunc orders." *State v. Thomas*, 239 Kan. 457, 720 P.2d 1059, 1062 (1986).

The error in petitioner's case seems far more significant than a mere clerical error. Without question the result was more significant.

■ Unlike a clerical error, a judicial error cannot be so easily corrected. A judicial error is an error that results from judicial reasoning or determination. *Wallace v. Wallace*, 214 Kan. 344, 520 P.2d 1221, 1225 (1974). Judicial errors include the power to decide a case wrongly. *Provance v. Shawnee Mission Unified School*, 235 Kan. 927, 683 P.2d 902, 906 (1984).

In the case before this court, a clerical error could easily have been corrected with a nunc pro tunc order. See *Thomas*, supra. A judicial error could not have been so easily corrected and would have required some explanation for the recall of the mandate of the court of appeals' final decision. It seems a fair statement that all parties thought the litigation course had been run when the mandate was issued on September 9, 1991. The subsequent decision of the Kansas Supreme Court extended the race another lap.

It is that extension that has violated petitioner's constitutional rights and that requires relief in this case.

■ A federal habeas court generally defers to a state's interpretation of its own rules and statutes recognizing that the violation of a state statute is a matter for state courts to decide. *Cain v. Petrovsky*, 798 F.2d 1194 (8th Cir.1986). However, interests protected by due process are not always created by the federal constitution, they are often created by some independent source quite frequently by state statute or rule entitling the person to certain benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1983).

■ "The Fourteenth Amendment prevents any state from depriving any person of life, liberty or property without due process of law and protects him or her from arbitrary action of the government." *Goddard v. Kansas Dept. of Corrections*, 16 Kan.App.2d 408, 824 P.2d 991, 993 (1992) citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459–60, 109 S.Ct. 1904, 1907–08, 104 L.Ed.2d 506 (1989). Procedural due process provides a guarantee of fair procedure in connection with any deprivation of life, liberty or property by the state. *Doyle v. The Oklahoma Bar Association*, 998 F.2d 1559 (10th Cir.1993).

■ Procedural due process questions require a two step analysis. The first is to determine whether an individual has a liberty interest which has been interfered with by the state. Second, an examination of the procedures that were attendant upon that deprivation to determine whether they were constitutionally sufficient. *Goddard, supra* at 994–95.

■ States can create liberty interests by statute or regulation. *Kentucky Dept. of Corrections, supra* 490 U.S. at 462, 109 S.Ct. at 1909. See *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (the state created a liberty interest by providing a good-time credit system which allowed reduction in a prisoner's sentence for good behavior).

■ "A state creates a protected liberty interest by placing substantive limitations on official discretion." *Kentucky Dept. of Corrections, supra* 490 U.S. at 462, 109 S.Ct. at 1909. Mandatory language in a statute or rule which does not allow an official to utilize his or her discretion once a triggering event

occurs is one clear example of the creation of such an interest.

In *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979), the United States Supreme Court held that despite the subjective nature of parole release decisions, when state statutes are written in such a way that an expectancy of release is created, a liberty interest emerges which is entitled to the protection of the United States Constitution. In *Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987), the Court again noted that a constitutionally protected liberty interest existed because the statute was drafted with unequivocal mandatory language.

 There is no doubt that petitioner has a liberty interest at stake in this case. Rule 8.03(b) is mandatory. On the date that the Kansas Supreme Court denies a petition for review, the decision of the Kansas Court of Appeals *shall* become final. This finality is automatic and no discretion may be exercised at that point.

When the final decision of the court of appeals was delivered, by mandate, to the Labette County District Court on September 9, 1991, petitioner's convictions were reversed and he was a free man. On October 1, when the supreme court recalled the mandate, the liberty which he had gained on September 9, was nullified. This liberty was not just some hoped for expectation in the future, but was the real, immediate and palpable liberty interest of his freedom. The court finds that petitioner had a protected liberty interest which was interfered with by the state.

The second step in the due process analysis concerns the quantum of process due petitioner under the Fourteenth Amendment. In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Court found that due process requires consideration of: the private interest which will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used; and the probable value of additional or substitute safeguards. The government's interest in terms of fiscal or administrative burdens to implement such safeguards is also considered. *Id.*

Due process is "flexible and calls for such procedural protections as the particular situation demands." *Greenholtz, supra.*

 Using the *Mathews* criteria in this case, the private interest affected by the official action was petitioner's loss of freedom. The risk of deprivation of this interest is great when a court can on its own motion arbitrarily withdraw the mandate of another court with no explanation for the withdrawal and with no opportunity for a hearing on its action. The value of additional safeguards, for example, notice to the parties of the precise nature of the error and an opportunity for the parties to be heard on the issue before the decision to overturn the denial of review seems a small burden on the state to protect the liberty of one of its citizens.

 The state argues that petitioner had an opportunity to be heard. The state is evidently referring to the oral argument on the substantive issue of petitioner's conviction. However, petitioner had already lost his freedom at that point and had been directed again to address issues already determined in his favor by a final order of the Kansas Court of Appeals. It appears to this court that for petitioner to be given a meaningful opportunity to be heard for due process purposes, that hearing must have been granted prior to any determination by the Kansas Supreme Court to recall the mandate of the court of appeals and again require petitioner to defend himself in court. When a court reinstates an action, sua sponte, without prior notice or an opportunity to be heard before the reinstatement, the defendant is deprived of due process. *Brown v. Fitzpatrick,* 224 Kan. 636, 585 P.2d 987, 990 (1978).

 When an individual's constitutional liberty interest is at stake, a federal habeas court may proceed as law and justice require. *Hannon v. Maschner,* 981 F.2d 1142, 1145 (10th Cir.1992). Habeas corpus proceedings have always been governed by principles of equity. *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

In this case, the court finds that petitioner's constitutional right to due process was denied when the Kansas Supreme Court, sua sponte, withdrew the final mandate of the

Kansas Court of Appeals. By this arbitrary action, the state interfered with petitioner's protected liberty interest, his freedom, without affording him notice and a meaningful opportunity to be heard prior to the loss of that freedom.

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is granted. Petitioner shall be released from custody under this sentence.

IT IS FURTHER ORDERED that this court's order is stayed for 10 days from the date of the filing of this Memorandum and Order to allow the filing of a notice of appeal. The clerk of the court is directed to transmit copies of this Memorandum and Order to petitioner and respondent.