No. 72,418
No. 72,666
No. 72,853

LARRY FARRIS, WILLIAM MEIER, and ROBERT DAWSON, *Appellees*, v. DAVID MCKUNE, Warden of Lansing Correctional Facility, *et al., Appellants.*

(911 P.2d 177)

Opinion filed February 2, 1996.

*Timothy G. Madden*, chief legal counsel, Kansas Department of Corrections, argued the cause and was on the briefs for the appellants.

*Bruce C. Hedrick*, of Legal Services for Prisoners, Inc., of Lansing, argued the cause for appellees and was on the brief for appellees Farris and Dawson.

*F. A. White, Jr.*, of Kansas City, Missouri, was on the brief for appellee Meier.

*Robert Dawson*, appellee, was on the brief pro se.

The opinion of the court was delivered by

ABBOTT, J.: This is a consolidated appeal. All three offenders pled guilty or nolo contendere to their respective crimes. The offenders were convicted and sentenced prior to July 1, 1993, the effective date of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 1994 Supp. 21-4701 *et seq*. This case concerns the offenders' eligibility for retroactive application of the KSGA, which would result in less severe sentences for the offenders. The offenders' eligibility for sentence conversion is determined by the severity level of their crimes. However, the crimes with the specific elements which the offenders were convicted of no longer exist. These crimes were repealed on the day the KSGA became effective, and new crimes covering sexual assaults became effective on that date. Thus, it was necessary for the Kansas Department of Corrections (KDOC) to convert the offenders' pre-guidelines crimes to guidelines crimes in order to determine the severity level of the crime under the guidelines. See K.S.A. 1994 Supp. 21-4724. Each of the offenders committed sexual crimes, and the severity level of the crimes under the KSGA depends upon the age of the victims at the time the crimes were committed.

To determine the age of the victims at the time the crimes were committed, KDOC relied on original complaints, amended informations, county/district attorney reports, affidavits of victims' parents, and presentence investigation (PSI) reports. After determining the ages of the victims, KDOC notified each of the offenders that their pre-guidelines criminal behavior had been converted to a guidelines crime with a severity level of 3. An offender whose crime severity level is 3 is not eligible for retroactive application of the KSGA.

To challenge this determination, each offender brought a K.S.A. 60-1501 action in the district court of Leavenworth County, which is the county in which they were incarcerated, not the county in which they were convicted. The trial court held that KDOC had violated the offenders' constitutional rights by using documents

which, in the court's opinion, had not been subject to due process in determining the offenders' crime severity level and disqualifying the offenders from retroactive application of the KSGA. The State appeals.

Appellee Larry Farris pled nolo contendere to two counts of aggravated sexual battery. The dates of birth of the victims were clearly stated in the information. Prior to the effective date of the KSGA, aggravated sexual battery required that the victim be less than 16 years of age.

The KDOC admittedly made a mistake and sent Farris a notification that he was not eligible for retroactivity because his pre-guidelines offense corresponded to a guidelines offense of rape, in violation of K.S.A. 1994 Supp. 21-3502. In the trial court, the State conceded that the notice was in error and that it should have stated Farris' pre-guidelines criminal behavior was converted to the guidelines crime of aggravated indecent liberties with a child, in violation of K.S.A. 1994 Supp. 21-3504(a)(3). Aggravated indecent liberties with a child is a severity level 3 crime under the guidelines, thereby making Farris ineligible for retroactive application of the KSGA.

K.S.A. 1994 Supp. 21-3504(a)(3) requires that the victim be under 14 years of age. Unquestionably, the records show that the victims were under 14 years of age, and one of the children may have been as young as 4. Farris, in the record before us, including oral argument, has never contended that the victims were over the statutory age.

Appellee William Meier entered a plea of nolo contendere to two counts of aggravated incest. At that time, the age of the victim was not an element of the crime, but the date of birth of the victim was clearly stated in the information. The KDOC sent Meier a notification letter stating that his pre-guidelines offense corresponded to a guidelines offense in violation of K.S.A. 1994 Supp. 21-3504(a)(3), aggravated indecent liberties with a child, which has a severity level of 3. Thus, the KDOC found the offender's crime made him ineligible for retroactive application of the KSGA. Aggravated indecent liberties with a child is lewd fondling or touching of a child who is under 14 years of age with intent to satisfy sexual

desires. The KDOC relied on information provided in the original complaint, the amended information, the county/district attorney report to the Secretary of Corrections, affidavits of the victim's parents, and PSI reports to show the victim's age and that the offender lewdly touched the victim with the intent to satisfy sexual desires. Again, the offender never challenged the age of the victim or contended that he did not touch the victim with the intent to satisfy sexual desires. Although there is a period of time alleged in the information in which the offenses might have occurred after the victim had turned 14, there is also clear evidence that some of the offenses occurred prior to the victim turning 14.

Appellee Robert Dawson pled guilty to aggravated incest in violation of K.S.A. 21-3603. The KDOC sent Dawson a notification letter that his pre-guidelines offense corresponded with a guidelines offense of K.S.A. 1994 Supp. 21-3504, aggravated indecent liberties with a child, which has a severity level of 3. Thus, Dawson was ineligible for retroactive application of the KSGA.

The KDOC relied on affidavits of the victim's parents and PSI reports to establish that the victim was under 14 years of age and that the offender possessed the necessary intent. The offender never challenged the age of the victim.

The trial court found that the KDOC relied on various "unsubstantiated documents which contain opinions and statements that were never made findings of fact by a court of law" in order to establish the elements of K.S.A. 1994 Supp. 21-3504. The trial court did not determine that the offenders were eligible for retroactivity, nor did it order the release of the offenders. The trial court simply remanded the case to the KDOC so that it could reevaluate the offenders' eligibility for retroactivity without using documents which the court felt had not been subject to due process.

This is a question of statutory interpretation and, thus, a question of law. The trial court's interpretation of the statute being a question of law, this court's scope of review is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

We believe this case is governed by *State v. Fierro*, 257 Kan. 639, 895 P.2d 186 (1995). *Fierro* involved an offender who, prior

to the effective date of the sentencing guidelines, pled nolo contendere to six counts of attempted indecent liberties with a child contrary to K.S.A. 1992 Supp. 21-3503 and K.S.A. 1992 Supp. 21-3301. However, Fierro was not sentenced until after July 1, 1993, when the KSGA became effective. By the time Fierro was sentenced, the elements of the crime which he was convicted of had been amended. Pursuant to K.S.A. 1993 Supp. 21-4724(f), the trial court computed both a pre-guidelines sentence and a guidelines sentence.

In order to compute a guidelines sentence, it was necessary for the trial court to convert the offender's pre-guidelines offense to a comparable guidelines offense. In *Fierro*, this court analyzed how the trial court should convert the offender's pre-guidelines crime. 257 Kan. at 648. *Fierro* points out that the same procedure used by the trial court when it converts a crime should also be used by KDOC when it converts a crime of an offender who was both convicted and sentenced prior to July 1, 1993. As *Fierro* states:

"We concentrate on the rules governing offenders who committed crimes before July 1, 1993, but were not sentenced until after July 1, 1993, although the *same rules would apply to persons sentenced before July 1, 1993*, if the statutory elements of the crime or crimes they committed changed on or before July 1, 1993." (Emphasis added.) 257 Kan. at 640.

"The reasoning of this appeal applies to all those crimes amended effective July 1, 1993, plus any crimes amended after a prisoner commenced serving a sentence, whether the amendment occurred before or after July 1, 1993. They are countless and involve a large number of prisoners." 257 Kan. at 649.

In *Fierro*, this court explained how pre-guidelines crimes are to be converted to comparable guidelines crimes in order to determine an offender's severity level and eligibility for retroactivity. This rule is quoted below:

"The legislature clearly intended that the defendant's sentence be modified by comparison with the sentencing guidelines as if the 'crime' had been committed on or after July 1, 1993. *In converting a sentence, the legislature intended that the Department of Corrections use records available to it to determine what the defendant did when the crime was committed and convert that crime to an analogous crime existing after July 1, 1993*. This is reflected throughout the sentencing guidelines. See, for example, K.S.A. 1993 Supp. 21-4707(b), (c)(1), and K.S.A. 1993 Supp. 21-4711(e).

. . . .

"Here, Fierro pleaded guilty to crimes involving victims whose ages are not in dispute. The legislature has expressed great concern for criminal acts directed at young children as demonstrated by the number of new crimes involving sexual acts committed on minors and by increasing penalties for these crimes.

"We hold the legislature intended that the trial court compute the sentence under the sentencing guidelines by looking at actual conduct and by applying the actual acts committed to the comparable crime in effect after July 1, 1993." (Emphasis added.) 257 Kan. at 650-51.

*Fierro* clarifies that KDOC may use all records which it has access to in order to determine the precise nature of the offender's pre-guidelines criminal behavior and to determine which guidelines crime is most analogous to the pre-guidelines behavior.

The appellees attempt to distinguish themselves from *Fierro*. In *Fierro*, the offender was convicted before July 1, 1993, but was not sentenced until after July 1, 1993. At Fierro's initial sentencing, the sentencing court, not KDOC, converted Fierro's crime to a guidelines crime by referring to verified facts which had been subjected to due process safeguards while the defendant was represented by counsel. Appellees contend that they were not provided the same protection which Fierro received. In the appellees' retroactivity determinations, KDOC, not a sentencing court, acted as a factfinder and utilized unverified information which had never been determined by a trial court to be factual under a reasonable doubt standard. The appellees argue that a sentencing court, as in *Fierro*, is in a better position than KDOC to evaluate the actual conduct of the offender. Furthermore, the appellees contend that when the trial court determined Fierro's sentence, it computed his sentence "as the law existed prior to July 1, 1993," pursuant to K.S.A. 1994 Supp. 21-4724(f). On the other hand, the appellees contend that their crimes were converted as if they had committed a new crime which became effective after July 1, 1993. Thus, they contend that their crimes were improperly converted because they were not converted "as the law existed prior to July 1, 1993."

The appellees are mistaken in their arguments. They misunderstand the purpose of K.S.A. 1994 Supp. 21-4724(f). K.S.A. 1994 Supp. 21-4724(f) requires the sentencing court to calculate both a pre-guidelines sentence and a guidelines sentence at the initial sen-

tencing of an offender who is convicted of a crime prior to July 1, 1993, but is not sentenced until after July 1, 1993. In *Fierro*, the offender was convicted of a crime prior to July 1, 1993, and thus was sentenced under the law which was in effect at such time. However, the trial court also calculated the offender's sentence under the guidelines as if the offender had committed the crime after July 1, 1993, in order to determine if the offender was eligible for retroactivity under the KSGA. Thus, under K.S.A. 1993 Supp. 21-4724(f), the trial court calculated both the sentences at the same time simply to expedite the sentencing process and to "enable the trial court to resolve the guidelines issue while facts were fresh and readily available to both the offender and the prosecutor and to prevent subsequent appeals to the trial court should the [offender] or the prosecutor disagree with the Department of Corrections' calculations on conversions." 257 Kan. at 649. The legislature required the sentencing court, rather than KDOC, to go ahead and convert the offender's crime at the initial sentencing and determine the offender's eligibility for retroactivity for mere convenience sake. However, K.S.A. 1993 Supp. 21-4724(f), as used in *Fierro*, does not indicate that all crime conversions should be made by a sentencing court. 257 Kan. at 649-50. In fact, the KSGA specifically allows KDOC to make such retroactivity determinations. See K.S.A. 1994 Supp. 21-4724(b)(1), (c)(1). Moreover, *Fierro* specifically states that its holding, regarding documents which may be used to convert a crime, applies beyond the precise facts of the case. 257 Kan. at 649-50.

Thus, the case at issue and *Fierro* are not distinguishable. KDOC properly used records available to it to convert the offenders' pre-guidelines criminal behavior into corresponding guidelines crimes which have severity levels of 3, thereby making the offenders ineligible for retroactivity. If the offenders object to the crime which KDOC converted them to, because KDOC relied upon documents with incorrect information, then the offenders have every right to contest the conversion in their respective sentencing courts under K.S.A. 1994 Supp. 21-4724(d)(1) or K.S.A. 60-1507. See *State v. Randall*, 257 Kan. 482, 486, 894 P.2d 196 (1995).

The appellees contend that they did not have an opportunity to contest KDOC's recommendations in the sentencing court directly under K.S.A. 1994 Supp. 21-4724(c)(1). The appellees point out that their conversion crimes had a severity level of 3; thus, they only received a notification of findings from KDOC, not a sentencing guidelines report. See K.S.A. 1994 Supp. 21-4724(d). The appellees contend that they did not have standing to challenge KDOC's recommendation in the sentencing court because they did not have a sentencing guidelines report. Moreover, Dawson asserts that even if the appellees could bring a direct action in the sentencing court, the 30-day time limitation ran out before they were able to file the motion. Presumably, the appellees also thought they could not bring a K.S.A. 60-1507 action in the sentencing court because they had not directly challenged KDOC's recommendation in the sentencing court first. According to the appellees, the only opportunity to challenge their notification of findings was to bring a K.S.A. 60-1501 action in the district court in the county of incarceration. *Randall* nullifies these arguments.

*Randall* holds that an offender may contest a notification of findings in the sentencing court pursuant to K.S.A. 60-1507 or "[m]islabeled pro se motions for sentence conversion under 21-4724(d) may be properly viewed as 60-1507 motions." 257 Kan. at 486. Thus, the appellees could have and still may contest KDOC's recommendation and the facts it relied upon in the sentencing court under K.S.A. 60-1507. The offenders may request their sentencing courts to correct their sentences at any time under K.S.A. 60-1507 if the sentences are illegal even without a prior direct appeal pursuant to 21-4724. A sentence is illegal if KDOC has failed to retroactively apply the sentencing guidelines based upon incorrect information and documents which it relied upon. See *Carmichael v. State*, 255 Kan. 10, 16, 872 P.2d 240 (1994). Thus, the State contends that the district court ruling should be reversed and KDOC should be able to rely on all records available to it. If KDOC bases its retroactivity determination on incorrect information, the offender should challenge the determination and the information relied upon in the sentencing court.

The State contends that KDOC's use of all records available to it in making retroactivity determinations does not violate the offenders' right to due process. After all, the offenders have already been afforded due process because they "have been convicted and lawfully sentenced to indeterminate sentences." As *Fierro* states:

"It is important to remember the trial court [or KDOC] at this stage is not dealing with guilt or innocence of a defendant. The defendant has been convicted and sentenced for the crime in effect when the defendant committed the crime. The issue before the court is whether the defendant will have a sentence reduction based on the severity level set by the legislature for crimes in effect on or after July 1, 1993." 257 Kan. at 651.

The Kansas Constitution does not require that the more lenient criminal sentences provided under the KSGA be applied retroactively. The legislature's grant of such retroactivity is an act of grace. See 257 Kan. at 649. As such, the retroactivity may be accompanied by any limiting procedure which the legislature provides, such as allowing the use of all documents available to KDOC when it determines an offender's eligibility for retroactivity. The State then points to two other circumstances in which the State's power to reduce an offender's sentence is restricted by limitations which do not violate an offender's due process rights—the Governor's pardon and the Secretary of Corrections' right to recommend a reduction of a criminal penalty. K.S.A. 1994 Supp. 22-3701; K.S.A. 22-3702; K.S.A. 22-3703; K.S.A. 22-3705; *Goddard v. Kansas Dept. of Corrections,* 16 Kan. App. 2d 408, 413-18, 824 P.2d 991 (1992). The fact that KDOC, in making a retroactivity determination, may use documents which the offender has not had an opportunity to defend against does not violate due process. If the offender disagrees with the retroactivity determination due to KDOC's reliance on incorrect information, the offender may seek relief in the sentencing court. K.S.A. 1994 Supp. 21-4724(d); K.S.A. 60-1507.

The appellees also contend that when KDOC relies on documents which an offender has not specifically pleaded guilty to, then KDOC, an executive agency, is acting as a judicial trier of fact in violation of the separation of powers doctrine. According to Dawson, once a conviction has been reached through a plea, the evidentiary process is complete. Thus, the only facts which the KDOC

should be able to use in a retroactivity determination are those which were specifically admitted to by the offender in the plea and accepted by the court. However, the State counters that the legislature has the power to create an "intermediate administrative procedure" in which KDOC relies on all records it has access to in order to ascertain the appropriate offense severity level of the offender's behavior. According to the State, the legislature created this procedure as a means to promote judicial economy in that if KDOC's retroactivity determination is uncontested, the need for further judicial proceedings in the sentencing court is avoided. KDOC's conversion procedure does not allow KDOC to act as a trier of fact and to arbitrarily and unilaterally accept as true unverified information found in documents which have not been subject to due process. Rather, KDOC's job is simply to collect uncontested information in order to determine what the "actual conduct " of the offender was. See *Fierro*, 257 Kan. at 650-51. If the information relied upon by KDOC turns out to be contested and the offender disagrees with KDOC's retroactivity determination, then the offender has every right to challenge the determination to a true trier of fact—the sentencing court. K.S.A. 1994 Supp. 21-4724(d); K.S.A. 60-1507; see *State v. Randall,* 257 Kan. at 486; *Carmichael v. State,* 225 Kan. at 16.

Under K.S.A. 1994 Supp. 21-4724(c)(2), the legislature specifically allows KDOC to consult all the records available when determining criminal *history* for retroactivity purposes. K.S.A. 1994 Supp. 21-4724(c)(2) states:

> "In determining the criminal history classification, the department of corrections shall conduct a reasonable search of the inmate's file and available presentence report, and make a reasonable inquiry of the Kansas bureau of investigation and the federal bureau of investigation, for other records of criminal or juvenile convictions which would affect the criminal history classification."

In *Fierro*, 257 Kan. at 650, this court supports its holding by specifically pointing out that the legislature allows KDOC to rely on all records available to determine an offender's criminal history. This court treats crime severity and criminal history analogously. Thus, it makes sense that if KDOC can use a broad range of doc-

uments to determine criminal history, then it should also be able to use a broad range of documents to determine crime severity.

However, the appellees point out that when KDOC determines an offender's criminal history for retroactivity purposes, the "[p]rior convictions of a crime defined by a statute which has since been repealed shall be scored using the classification assigned at the time of such conviction." K.S.A. 1994 Supp. 21-4710a(d)(9). The appellees contend that if criminal history and crime severity are to be treated analogously, then an offender's crime severity determination for a crime which has been repealed should be scored using the classification assigned at the time of the convictions. The appellees reason that the statutory classification number of the crime they were convicted of should dictate their crime severity level, not a completely different crime which contains elements different from those which the offenders were originally found guilty of. We disagree.

While criminal history and crime severity are treated analogously, there is still a distinction between the two. When converting a crime to determine crime severity for retroactivity purposes, KDOC and/or the sentencing court have access to all the documents concerning the offender's conviction for that particular crime. Thus, KDOC or the sentencing court will be able to look back at these documents and this particular crime to determine the offender's "actual conduct and [apply] the actual acts committed to the comparable crime in effect after July 1, 1993." *Fierro*, 257 Kan. at 651. The legislature also wanted KDOC to use whatever documents it had access to in order to determine an offender's criminal history. K.S.A. 1994 Supp. 21-4724(c)(2). However, the legislature realized that much of an offender's criminal history may have occurred years ago in different counties and states. Thus, KDOC and/or the sentencing court may not have all of the documents on hand concerning an offender's prior crimes. Consequently, it would be impossible for KDOC or a sentencing court to look back at all of an offender's prior crimes and determine the "actual acts committed." Hence, for mere convenience sake, the legislature decided that KDOC and/or the sentencing court should not have to determine what actually occurred in an offender's crim-

inal history. All KDOC or the sentencing court has to do is look at verified convictions and convert those convictions to currently existing crimes with the same classification number. On the other hand, it is possible for KDOC and/or the sentencing court to look back at the one crime at issue for which the offender desires to be converted and determine what actually occurred. Thus, the crime should be converted to the most comparable guidelines crime and not simply converted to the guidelines crime based on the same classification number as the crime which the offender was initially convicted of or based only on the facts which the offender specifically admitted.

Finally, according to Meier, even if this court allows KDOC to use all records available to it in a retroactivity determination and the offender contests KDOC's determination in the sentencing court, such challenge would be a nullity unless KDOC could prove beyond a reasonable doubt the facts it relied upon to convert the offender's crime. Meier is incorrect. It is not necessary for sentencing factors to be proven beyond a reasonable doubt. "Facts" established for use in sentencing require less evidentiary weight than facts asserted for conviction. See *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986) (reasoning that the states may prescribe a burden of proof lower than beyond a reasonable doubt for sentencing factors).

In further support of the State's argument, *Fierro* specifically affirms *State v. Colston*, 20 Kan. App. 2d 107, 883 P.2d 1231 (1994). 257 Kan. at 651. In *Colston*, the offender pled no contest to aggravated incest with a child. KDOC converted Colston's pre-guidelines criminal behavior to the guidelines crime of aggravated incest, which has a severity level of 5. The State objected to KDOC's determination, contending that by reference to the charging instrument, plea transcript, trial transcript, and other documentation, Colston's criminal activity should be converted to the guidelines offense of aggravated criminal sodomy in violation of K.S.A. 1993 Supp. 21-3506, which has a severity level of 2. The Court of Appeals stated:

"We agree with the State's argument and conclude that the legislative intent of K.S.A. 1993 Supp. 21-4724(c)(1) is to look to the criminal acts committed prior

to July 1, 1993, for which the defendant was convicted and then determine what crime those acts would constitute after July 1, 1993, and the appropriate severity level.

"In this case, Colston pled nolo contendere, was found guilty, and was convicted of acts described in the amended information which, at the time of his plea, constituted the elements of aggravated incest contrary to K.S.A. 21-3603, but which acts constitute the elements of aggravated criminal sodomy after July 1, 1993, contrary to K.S.A. 1993 Supp. 21-3506.

. . . .

". . . Therefore, it was proper for the DOC and sentencing court to look to the well-pleaded facts of the information and to the journal entries to determine Colston's post-guidelines crime of conviction." 20 Kan. App. 2d at 112-15.

Meier attempts to distinguish *Colston* with three arguments. First, Meier points out that the offender's behavior in *Colston* was converted to a severity level 5 crime; thus, both the offender and the sentencing court received guidelines reports concerning his eligibility for retroactivity. This is an irrelevant distinction. Meier may contest his notification of findings in the sentencing court just as Colston could have a contested the guidelines report in the sentencing court. See *State v. Randall,* 257 Kan. at 486.

Secondly, Meier asserts that there was no question in *Colston,* as there is here, that Colston pled guilty to each of the elements in his converted guidelines offense. Meier concedes that if he had been charged after July 1, 1993, he may have been charged with the crime which KDOC now wishes to convert his crime to, K.S.A. 1994 Supp. 21-3504(a)(3)(A). However, Meier points out that had he pleaded to the crime of 21-3504(a)(3)(A) in the same manner that he pleaded to the crime of which he was actually convicted, it would have been constitutionally impermissible for the sentencing court to accept his plea and find him guilty of violating 21-3504(a)(3)(A). Meier's nolo plea to the 21-3603 charge was only an admission that the State would be able to prove beyond a reasonable doubt that the victim was under 18 when the offense occurred. This was the only age element which was important at the time. The crime which KDOC contends that the offender committed, 21-3504(a)(3), aggravated indecent liberties with a child, requires that the victim be under age 14. Meier contends that KDOC could not have determined the victim was under 14 at the time of the

offense simply from the charging document and the date of birth of the victim.

Meier is incorrect. As *Colston* point out, when an offender enters a plea of nolo contendere, as Meier did, then the offender admits to all of the well-pleaded facts of the information for purposes of the case. 20 Kan. App. 2d at 114 (citing *Lott v. United States*, 367 U.S. 421, 426, 6 L. Ed. 2d 940, 81 S. Ct. 1563 [1961]; *Lill v. State*, 4 Kan. App. 2d 40, 42, 602 P.2d 129 [1979]). Meier's well-pleaded information contained the date of birth of the victim and the dates between which the offenses occurred. Thus, Meier admitted to committing the offenses during a time in which the victim was under 14 years of age. KDOC may rely on this document and Meier's accompanying admission to determine the actual criminal conduct which occurred and may convert Meier's crime to a guidelines crime which contains as an element that the victim be under 14 years of age. If Meier contests this conversion because the victim was not actually under 14 years of age when the offense occurred, then Meier may bring a challenge in the sentencing court. K.S.A. 1994 Supp. 21-4724; K.S.A. 60-1507.

Meier makes a third attempt to distinguish his situation from the *Colston* case. Meier contends that, when KDOC converted the offender's pre-guidelines crime in the *Colston* case, KDOC did not have various guidelines conversion crimes to choose from as it did in Meier's case. Meier contends that KDOC could have converted his pre-guidelines crime to several different guidelines crimes, some of which would have resulted in retroactivity and some of which would not result in retroactivity. For instance, according to Meier, KDOC could have converted his criminal behavior to K.S.A. 1994 Supp. 21-3503(a)(1), indecent liberties with a child (requiring the victim to be between the ages of 14 and 16), which is a severity level 5 crime, or K.S.A. 1994 Supp. 21-3504(a)(2)(a), aggravated indecent liberties with a child (requiring the victim be between the ages of 14 and 16), which is a severity level 4 crime. Meier does not understand why KDOC automatically chose to convert his behavior to a guidelines crime which would result in a lower severity level so as to prevent retroactive application of the guidelines to him.

The fact that KDOC had more than one guidelines crime which it could have converted Meier's crime to is not a reason to distinguish this case from *Colston*. Since the legislature gave KDOC the power to convert an offender's pre-guidelines crime to a guidelines crime as "if the crime were committed on or after July 1, 1993," then the legislature also gave KDOC the power to determine among several choices which conversion crime is the most comparable to of the offender's pre-guidelines behavior. K.S.A. 1994 Supp. 21-4724(c)(1). This appears to be the intent of the legislature in all crime severity determinations. See K.S.A. 1994 Supp. 21-4707(a) ("If a person is convicted of two or more crimes, then the severity level shall be determined by the most severe crime of conviction."); K.S.A. 1994 Supp. 21-4707(b) ("When the statutory definition of a crime includes a broad range of criminal conduct, the crime may be subclassified factually in more than one crime category to capture the full range of criminal conduct covered by the crime."). Apparently, KDOC found Meier's pre-guidelines behavior most analogous to the guidelines crime of aggravated indecent liberties with a child, K.S.A. 1994 Supp. 21-3504(a)(3). Again, if KDOC is mistaken as to which guidelines crime is most analogous to the offender's pre-guidelines crime, the offender may challenge this determination in the sentencing court.

Instead of looking to the *Colston* case, Meier and Dawson suggest that this court look to *State v. King*, No. 71,448, unpublished Court of Appeals opinion filed December 16, 1994, as an analogous case. The parties improperly cite to an unpublished opinion, and it will not be considered. See Supreme Court Rule 7.04 (1995 Kan. Ct. R. Annot. 40).

We conclude by pointing to *Fierro*, which specifically states that "[i]n converting a sentence, the legislature intended that the Department of Corrections use records available to it to determine what the defendant did when the crime was committed and convert that crime to an analogous crime existing after July 1, 1993." 257 Kan. at 650. As such, KDOC properly relied upon the Farris and Meier charging documents to prove the victims were under 14 years of age at the time of the offenses. However, *Fierro* did not limit the records which may be used by KDOC to the charging

document. Thus, KDOC also properly relied on the county/district attorney report to prove that Meier lewdly touched the victim with the intent to satisfy sexual desires. Furthermore, KDOC properly used Dawson's PSI report to determine that the victims were under 14 years of age at the time of the offenses. In converting a defendant's sentence, KDOC is authorized to rely upon all documents available to it, including, but not limited to, the complaint, the amended information, county/district attorney reports, affidavits of victims' parents, and the PSI reports.

The trial court is reversed and the case is remanded to the trial court to enter an order denying the K.S.A. 60-1501 motions in each of the three cases.

SIX, J., concurring: The majority opinion holds that the consolidated cases now before the court are controlled by *State v. Fierro*, 257 Kan. 639, 895 P. 2d 186 (1995). I agree. I wrote a concurring and dissenting opinion in *Fierro*, which was joined by only one other member of the court. I am obliged to follow the law as stated in *Fierro*.