[No. A030220. First Dist., Div. Three. Jan. 9, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DWAYNE LOPEZ, Defendant and Appellant.

## COUNSEL

Paul D. Seeman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BARRY-DEAL, J.**—Appellant Robert Lopez pleaded guilty to two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2))[1] and admitted two personal-use-of-a-firearm enhancements (§ 12022.5). The court found true two allegations of inflicting great bodily injury within the meaning of section 12022.7. Appellant was sentenced to six years' imprisonment;[2] the entire sentence was suspended, and he was placed on three years' probation. Appellant claims there was no evidence to support a conviction of causing great bodily injury.

### Facts

On January 5, 1984, at approximately 8 p.m., Terry Clevenger, his brother, and a friend were outside Clevenger's house working on Clevenger's car. A yellow car driven by appellant began "hot rodding" up and down the street. The car "spun out" in front of Clevenger's house one or two times. Appellant appeared to lose control of the car during his maneuvers. Clevenger approached appellant and suggested that he park the car because

---

[1] All further statutory references are to the Penal Code.

[2] Appellant was sentenced on count one to the midterm of three years on the assault with a deadly weapon conviction and three years on the great bodily injury enhancement. An identical concurrent sentence was imposed on count two.

appellant looked a little incoherent. Appellant backed up the street at 40 miles per hour, revved his engine, proceeded towards Clevenger's house, turned left, and collided with a 1957 Chevrolet owned by Clevenger's friend. Clevenger's sister was in the car that was hit, but apparently was not injured.

Clevenger, his brother, and his friend approached appellant. Clevenger's sister said something to appellant, who responded with obscenities. Clevenger then hit appellant on the side of the face. Clevenger suggested that appellant and his friend exchange license information and proceeded to walk away.

Within a few seconds, Clevenger heard a ringing in his ear and fell to the ground, screaming. He had been shot in the right cheek of the hip. Because Clevenger was dazed, he felt nothing except hitting the ground. He recalled hearing a few more shots.

Marie Marasino, Clevenger's girlfriend, observed the incident from the walkway of her house. She saw appellant standing by his car with a gun pointed and "fire" coming out of it. When she saw Clevenger fall, she ran to assist him. Marasino was then shot in the left leg, the bullet penetrating and exiting the thigh. She felt "fire" in her leg, but was able to drag Clevenger to safety.

## Statement of the Case

On March 22, 1984, appellant was charged by information with two counts of assault with a deadly weapon (§ 245, subd. (a)(2)). Each count further alleged a personal-use-of-a-firearm enhancement (§ 12022.5) and a great bodily injury enhancement (§ 12022.7). The following day appellant pleaded not guilty to both counts and denied the enhancement allegations.

On April 12, 1984, appellant noticed a motion pursuant to section 995 to dismiss the two great bodily injury enhancements for lack of evidence. The motion was denied on May 2, 1984. On July 2, appellant withdrew his not guilty pleas and entered pleas of guilty to the two assault charges and admitted the two personal-use-of-a-firearm enhancements. Appellant also waived his right to a jury trial concerning the allegations of inflicting great bodily injury.

After a hearing, the court found the great bodily injury allegations to be true. Appellant was sentenced,[3] probation was granted, and this appeal followed.

---

[3]See footnote 2, *ante.*

*Discussion*

Section 12022.7 states, in pertinent part: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he [or she] has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he [or she] is convicted. [¶] As used in this section, great bodily injury means a significant or substantial physical injury. . . ."[4]

Appellant asserts that the evidence was insufficient to support a finding of great bodily injury because the injuries suffered by Clevenger and Marasino were superficial, transitory, and short-lived. (See *People* v. *Caudillo* (1978) 21 Cal.3d 562, 588-589 [146 Cal.Rptr. 859, 580 P.2d 274].) He argues that Clevenger felt no pain when he was shot in the right cheek of the hip and that there was no evidence that the wound was more than superficial. Appellant notes that a bullet traversed Marasino's thigh, but there was no evidence that the wound was more than superficial or that she suffered more than momentary distress.[5]

■ The determination of whether the harm resulting to the victim constitutes great bodily injury is a question of fact, and the finding will be upheld if there is sufficient evidence to sustain it. (*People* v. *Wolcott, supra,* 34 Cal.3d 92, 107.) "A fine line can divide an injury from being significant

---

[4]"As originally enacted in 1976, section 12022.7 provided that: [¶] 'As used in this section "great bodily injury" means a serious impairment of physical condition, which includes any of the following: [¶] (a) Prolonged loss of consciousness. [¶] (b) Severe concussion. [¶] (c) Protracted loss of any bodily member or organ. [¶] (d) Protracted impairment of function of any bodily member or organ or bone. [¶] (e) A wound or wounds requiring extensive suturing. [¶] (f) Serious disfigurement. [¶] (g) Severe physical pain inflicted by torture.' (Stats. 1976, ch. 1139, § 306, p. 5163.)

"This detailed definition of great bodily injury, however, was short-lived. In 1977 the Legislature amended section 12022.7 to strike out the detailed definition of great bodily injury and to substitute the statement that: 'As used in this section, great bodily injury means a significant or substantial physical injury.' (Stats. 1977, ch. 165, § 94.) In *People* v. *Caudillo* (1978) 21 Cal.3d 562, 581-582 . . ., this court explained the intent of the 1977 amendment to section 12022.7: '[T]he 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that the 1976 detailed definition of great bodily injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein.'" (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 106, fn. 7 [192 Cal.Rptr. 748, 665 P.2d 520].)

[5]The record reveals no evidence that either Clevenger or Marasino sought or received medical treatment for their injuries.

or substantial from an injury that does not quite meet the description. Clearly it is the trier of fact that must in most situations make the determination." (*People* v. *Jaramillo* (1979) 98 Cal.App.3d 830, 836 [159 Cal.Rptr. 771]; accord *People* v. *Wolcott, supra,* at p. 107.)

In support of his argument, appellant states that cases which uphold findings of great bodily injury take pains to point out evidence of the long-term aspects of the injuries involved. Thus, in *People* v. *Jaramillo, supra,* 98 Cal.App.3d 830, the court upheld a finding of great bodily injury in a child abuse case in which the victim suffered multiple contusions over various parts of her body, causing swelling and discoloration. The victim was still in pain the following day and was treated at a hospital. (*Id.,* at pp. 835-836.)

In *People* v. *Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552], the victim was shot once in the chest and once in the arm during a robbery. The court observed that "[b]oth Burk's chest wound *and* the damage caused by the bullet which pierced Burk's arm could reasonably have been found by the jurors to constitute great bodily injuries." (*Id.,* at p. 883, italics added.)

In *People* v. *Wolcott, supra,* 34 Cal.3d 92, the victim was shot in the leg during a robbery. The bullet entered the calf, tearing the muscle tissue. Shattered bullet fragments cut the victim's arms and legs. Some fragments lodged in his arms. However, little blood was lost, and no sutures were used. Although the victim was hospitalized the day of the injury, he was released after treatment and went to work the following day. (*Id.,* at p. 107.)

In upholding the finding of great bodily injury, the *Wolcott* court employed the following reasoning: "Wolcott relies on *People* v. *Caudillo, supra,* 21 Cal.3d 562, in which we held that various physical effects—gagging, vomiting, defecation, and superficial cuts—suffered during a violent sexual attack did not constitute great bodily injury. Describing such injuries as 'transitory and short-lived bodily distress' (p. 588), we concluded that they did not fall within the statutory definition of 'significant or substantial physical injury' (p. 589).

"Subsequent decisions, however, indicate that injuries slightly more severe than those sustained by the victim in *Caudillo* will qualify as 'great bodily injury.' *People* v. *Williams* (1981) 115 Cal.App.3d 446 . . ., like *Caudillo,* involved injuries inflicted during a rape, but the victim in *Williams,* a virgin, suffered genital tearing, trauma, and pain. In *People* v. *Sanchez* (1982) 131 Cal.App.3d 718 . . ., another rape case, the victim

incurred multiple abrasions and lacerations. In *People* v. *Jaramillo, supra,* 98 Cal.App.3d 830, the child victim of a beating suffered bruising and swelling on her hands, arms, and buttocks. In *People* v. *Salas* [1978], 77 Cal.App.3d 600 [143 Cal.Rptr. 755], the robbery victim had a broken nose, one tooth knocked out, and cuts requiring three or four sutures. In each of these cases the Court of Appeal upheld a verdict finding great bodily injury.

"The injuries in the present case are more substantial than those in *Caudillo*. King's penetrating wounds cannot be described as 'superficial,' and in as much as some fragments remain in his body the injury is not a 'short-lived' or 'transitory' one. The injuries thus resemble those found sufficient to support a verdict of great bodily injury in the cited Court of Appeal decisions.

"Moreover, *Caudillo* and *People* v. *Schoenfeld* (1980) 111 Cal.App.3d 671 . . . are distinguishable on another ground. In both cases the court was concerned that the physical manifestations of the psychological stress ordinarily caused by rape (*Caudillo*) or kidnaping (*Schoenfeld*) would be used to support a great bodily injury enhancement. Such an enhancement would be inconsistent with the statutory purpose of deterring the use of excessive force and the infliction of additional harm beyond that inherent in the crime itself. (See *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 725 . . . .) In the present case the injury to Jessie King was not merely a physical effect of the shock and fear commonly felt by robbery victims, but the result of an additional violent act beyond that of the robbery itself." (*People* v. *Wolcott, supra,* 34 Cal.3d 92, 107-108.)

██ In the instant case, as in *Wolcott,* the penetrating wounds suffered by Clevenger and Marasino cannot be considered superficial. Clevenger immediately fell to the ground upon being shot, was disoriented, and screamed. Marasino felt "fire" when shot in the thigh. These bullet wounds are no less transitory or short-lived than that suffered by the victim to his arm in *People* v. *Miller, supra,* 18 Cal.3d 873, 883, and although no bullet fragments remained inside the victims' bodies to work their way out, as in *Wolcott,* the distinction is insufficient to overturn the court's finding.

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.