No. 74,144

STATE OF KANSAS, *Appellee,* v. DONALD WHITAKER, *Appellant.*

(917 P.2d 859)

Opinion filed May 31, 1996.

*Mary D. Prewitt,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Charles R. Reimer,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of two counts of kidnapping and one count each of aggravated robbery, attempted aggravated robbery, and aggravated battery against a law enforcement officer. He was sentenced to a controlling term of 20 years to life. In *State v. Whitaker (Whitaker I),* 255 Kan. 118, 872 P.2d 278 (1994), the convictions were affirmed and the sentences were va-

cated. Upon resentencing, the same sentences were imposed. This is Whitaker's appeal from the resentencing. Whitaker now argues the sentencing judge failed to follow this court's mandate when resentencing him and erred in computing the severity level of his conviction for aggravated battery against a law enforcement officer under the Kansas Sentencing Guidelines Act (KSGA). A detailed summary of the facts is not necessary to the issues on appeal.

## Failure To Follow Court's Mandate On Remand

In Whitaker's first appeal, he complained that the trial court enhanced his sentence because he had given false testimony at trial. The *Whitaker* court held that the fact a defendant gave false testimony at trial is an appropriate sentencing consideration, but only if the sentencing judge finds that it negatively affects the defendant's capacity for rehabilitation.

The district judge, when originally sentencing Whitaker, stated he had received and reviewed the presentence investigation report and he noted the sentencing factors of K.S.A. 21-4606. There was no substantial prior criminal history. The judge observed that Trotter and Carr suffered significant emotional harm. He pointed out that Officer Taylor could have been killed in the gunfire. The judge recognized that although Whitaker was not the person who fired the weapon at Officer Taylor, injury was a foreseeable consequence of Whitaker's acts. After discussing the sentencing factors, the judge stated:

" 'There is one additional criteria I think is important to consider, even though it's not one of those listed in 4606, that comes out of a Supreme Court case, *State v. May,* found at 227 Kansas, page 393, in which it states that the Court may take into consideration the fact that the defendant took the stand and, swearing under oath, made false statements in his testimony; and that has further been stated to be appropriate consideration by the United States Supreme Court in *United States v. Grayson,* . . . found at 438 U.S., page 41. I think the Court should be very cautious in taking this into consideration as a criteria and that it should be very clear that the defendant knowingly, willingly, took the stand and committed a fabrication of his testimony. I don't know how much of Mr. Whitaker's testimony might have been fabricated, but I know at least a portion must have been fabricated, because it was just too inconsistent with known facts, and for that reason I think that should be an appropriate consideration the Court may use in arriving at a sentencing in this case.' " 255 Kan. at 135-36.

The judge sentenced Whitaker to a controlling sentence of 20 years to life.

In evaluating Whitaker's claim that the district judge erred in enhancing his sentence on the basis that the judge thought he gave false testimony during the trial, the *Whitaker I* court noted that a similar issue was raised in a Court of Appeals case, *State v. Manzanares*, 19 Kan. App. 2d 214, 866 P.2d 1083 (1994). We observed that in affirming Manzanares' sentence, imposed in part because the defendant denied culpability for his actions, the Court of Appeals relied on *People v. Ward*, 113 Ill. 2d 516, 499 N.E.2d 422 (1986), which in turn had relied on *United States v. Grayson*, 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610 (1978).

In *Grayson*, the United States Supreme Court noted that a defendant's truthfulness while testifying on his own behalf has been deemed probative of his attitudes toward society and his prospects for rehabilitation and hence relevant to sentencing. 438 U.S. at 50. It observed that defendants have a right to testify in their own behalf, but they do not have a right to testify falsely. 438 U.S. at 54. The *Grayson* Court did not hold that sentences could be automatically enhanced if the defendant's testimony is deemed false. However, a sentencing judge has the authority to evaluate carefully a defendant's testimony, determine whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to the defendant's prospects for rehabilitation and restoration to a useful place in society. 438 U.S. at 55.

In *Whitaker I*, we observed that the sentencing judge's comments showed he applied *Grayson*. The problem in applying *Grayson* was not so much whether, and to what extent, Whitaker lied on the stand but whether the sentencing judge carefully considered whether the false testimony, in light of other knowledge available to the trial court, affected Whitaker's capacity for rehabilitation. We stated:

"Defendants taking the stand in their own defense who clearly lie under oath can have their sentences enhanced if that fact is relevant to the question of the defendants' individual capacity for rehabilitation. The record must show, either ex-

pressly or by implication, that the judge who enhances a defendant's sentence because of false testimony has found the false testimony negatively affects the defendant's capacity for rehabilitation." 255 Kan. at 138-39.

We also acknowledged that it is the sentencing judge alone who determines the appropriate sentence or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. Because we were unable to determine from the sentencing transcript if the district judge carefully considered, or failed to consider, the impact Whitaker's false testimony had on his capacity for rehabilitation, we vacated Whitaker's sentences and remanded for resentencing, instructing the district judge to consider the impact of Whitaker's false testimony on his capacity for rehabilitation. 255 Kan. at 139.

At the resentencing hearing Whitaker, in an effort to mitigate the possible sentence to be imposed, stressed the progress he had made in prison, including education and training, and asked that a sentence of 10 to 40 years be imposed. The State renewed its original request for a sentence of 65 years to life. After hearing argument, the judge reimposed the 20-to-life sentence. He gave a detailed explanation for imposing that sentence. The judge reiterated that Whitaker had fabricated his testimony at trial. As to how that fact negatively affected Whitaker's capacity for rehabilitation, the trial judge stated:

"So, the first part of that test I think certainly has been met, that his testimony was willful and contained material falsehoods.

"The second part of the test is to assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society; that it isn't just a question of punishing Mr. Whitaker for fabricating the testimony; it's a question of taking into consideration the fact that he fabricated material testimony, whether that would affect his ability to be rehabilitated in this case."

"Regarding the issue of his prospect for rehabilitation . . . , while he is doing a number of things to try to better himself, he sometimes has a lot of underlying problems relating to his failure to accept responsibility in this case and the fact that he is . . . self centered and has this inflated opinion about himself. *When a person takes the witness stand and fabricates testimony in an effort to avoid criminal responsibility, I don't know that that should automatically mean that he's*

*going to be a difficult prospect for rehabilitation, but it certainly would reflect a strong possibility that when you look at that, coupled with this evaluation that has been performed by the Diagnostic Center, I think that helps to support the argument that it does affect his prospects for rehabilitation and restoration as a useful citizen within the community.* And certainly that was not the only reason the Court imposed the sentence that the Court did initially at the sentencing hearing. I just wanted to put all the cards out on the table that was a factor that the Court was considering, not the controlling factor, maybe not even, you could argue, a substantial factor. It's just a factor. Because I think that Mr. Whitaker deserved to know what was going through the Court's mind, that he had willfully chosen to take the witness stand and spin a yarn that he thought that the jury would believe in an effort to save his own hide. *And that his continued position in failing to accept his responsibility for his actions in this case as evidenced by the Diagnostic Center evaluation and what they call only a fair acceptance or remorse in involvement in this case, certainly affects the prospect of rehabilitation for Mr. Whitaker in a negative sense."* (Emphasis added.)

The judge then stated that the issue of false testimony was only a minor factor in determining Whitaker's original sentence. The judge explained that in the earlier sentencing he had attempted to impress upon Whitaker the responsibility placed upon a defendant who takes the witness stand and fabricates testimony. The judge reimposed a controlling sentence of 20 years to life.

In this second appeal, Whitaker declares that the sentencing judge failed to make the findings this court directed be made on remand. He asserts: "The trial court *never* draws any link of relevance from his opinion of the testimony to a finding that it bears on Mr. Whitaker's capacity for rehabilitation." This assertion is incorrect. The sentencing judge made the requisite findings as evidenced by the italicized portion of the judge's statements previously quoted.

In *Whitaker I,* we noted that it is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's broad discretion and not a result of partiality, prejudice, oppression, or corrupt motive. *State v. McDonald,* 250 Kan. 73, Syl. ¶ 4, 824 P.2d 941 (1992). We held that defendants who testify in their own defense and clearly lie under oath can have their sentences enhanced if that fact is relevant to the question of the defendants' individual

capacity for rehabilitation. The record must show, either expressly or by implication, that the judge who enhances a defendant's sentence because of false testimony has found that the false testimony negatively affects the defendant's capacity for rehabilitation. *Whitaker I*, 255 Kan. 118, Syl. ¶ 9.

A review of the record shows that the sentencing judge did not abuse his discretion in reimposing a controlling sentence of 20 years to life. Although there was evidence that Whitaker had furthered his education and training while incarcerated, the evidence available to the judge also indicated that Whitaker had failed to accept responsibility for his criminal acts. In addition to Whitaker's refusal to accept responsibility, as expressed in the TCF report, the judge found that his false testimony during the trial adversely affected the prospects of his rehabilitation. The sentencing judge followed this court's mandate and made the necessary findings. The record supports the judge's enhancement of the defendant's sentence because the false testimony negatively affected the defendant's capacity for rehabilitation. The sentences imposed were not an abuse of discretion.

## Determining the Severity Level

Whitaker also contends that the sentencing judge erred in computing the severity level of his conviction for aggravated battery against a law enforcement officer under the KSGA. K.S.A. 21-4724(f) requires that for persons who committed crimes prior to July 1, 1993, but who are sentenced after that date, the sentencing court shall impose a pre-KSGA sentence but shall also compute the appropriate KSGA sentence. Although Whitaker committed his crimes prior to the effective date of the KSGA, the resentencing occurred after the KSGA took effect. In compliance with K.S.A. 21-4724(f), the sentencing judge computed the appropriate KSGA sentence. The sentencing judge stated that the aggravated battery against a law enforcement officer conviction was a severity level 3 offense. Whitaker challenges this finding on appeal.

At the time of Whitaker's offense, aggravated battery against a law enforcement officer was an aggravated battery "committed against a uniformed or properly identified state, county, or city, law

enforcement officer while such officer is engaged in the perform-ance of his duty." K.S.A. 21-3415 (Ensley 1988). Aggravated bat-tery was defined as

"the unlawful touching or application of force to the person of another with intent to injure that person or another and which either:

"(a) Inflicts great bodily harm upon him; or

"(b) Causes any disfigurement or dismemberment to or of his person; or

"(c) Is done with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, dismemberment, or death can be inflicted." K.S.A. 21-3414 (Ensley 1988).

Whitaker was charged with aggravated battery as described in sub-section (c), aggravated battery with a deadly weapon or in a manner in which great bodily harm, disfigurement, dismemberment, or death could be inflicted. At the time of Whitaker's offense, the crime was a class B felony. K.S.A. 21-3415 (Ensley 1988).

With the enactment of the KSGA, the definitions of aggravated battery against a law enforcement officer were modified and dif-ferent severity levels were assigned to the various manners in which the crime could be committed. The crime is a severity level 3 crime if it is committed by "[i]ntentionally causing great bodily harm to another person or disfigurement of another person." K.S.A. 21-3414(a)(1)(A); K.S.A. 21-3415(a)(1), (b)(1). The crime is a severity level 6 crime if it is committed by "intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be in-flicted" or by "intentionally causing physical contact with another person when done in a rude, insulting, or angry manner with a deadly weapon, or in any manner whereby great bodily harm, dis-figurement or death can be inflicted." K.S.A. 21-3414(a)(1)(B), (C); K.S.A. 21-3415(a)(2), (b)(2).

The question here is whether Whitaker's offense of aggravated battery against a law enforcement officer is properly classified as a severity level 3 or 6 crime.

According to the parties, the crucial determination in classifying this crime as a severity level 3 crime is that there must have been an intent by the defendant to cause great bodily harm. Although the State could have originally charged Whitaker with aggravated

battery against a law enforcement officer by the manner of inflicting great bodily harm as defined in K.S.A. 21-3414(a) (Ensley 1988), the State instead charged Whitaker with committing the crime by using a deadly weapon or in a manner in which great bodily harm could be inflicted as defined in K.S.A. 21-3414(c) (Ensley 1988). Whitaker states the element of "intentionally causing great bodily harm or disfigurement" was neither alleged in the complaint nor proven in his trial.

Whitaker argues that it is error to assign a severity level based on an element of an offense which did not exist in the statute at the time the offense was committed. As authority, Whitaker relies on *State v. Houdyshell*, 20 Kan. App. 2d 90, 884 P.2d 437 (1994). Houdyshell had been convicted of aggravated battery under K.S.A. 21-3414 committed prior to July 1, 1993. The *Houdyshell* court held it was error to assign a severity level to the convictions predicated upon an element that did not exist in the statute at the time of the offense. The defendant's reliance on *Houdyshell* is misplaced as the procedure to assign a severity level set out in *Houdyshell* was disapproved by this court in *State v. Fierro*, 257 Kan. 639, 651, 895 P.2d 186 (1995).

In *Fierro*, 257 Kan. at 649, we noted that historically, the fundamental rule is that a person convicted of a crime is given the sentence in effect when the crime was committed. See *State v. Reed*, 248 Kan. 792, 795, 811 P.2d 1163 (1991). That rule is reflected in K.S.A. 21-4723 and K.S.A. 21-4724(f), which require the sentencing court to impose a sentence as provided pursuant to law as the law existed prior to July 1, 1993, for crimes committed prior to that date. *Fierro*, 257 Kan. at 649.

Under *Fierro*, 257 Kan. 639, Syl. ¶ 5, and our later decision in *Farris v. McKune*, 259 Kan. 181, Syl. ¶ 2, 911 P.2d 177 (1996), we decided that in applying K.S.A. 21-4724, the Department of Corrections (DOC) or the sentencing judge must convert a pre-KSGA crime to an analogous post-KSGA crime. The sentencing judge is required to compute the guidelines classification "by looking at actual conduct and by applying the actual acts committed to the comparable crime in effect after July 1, 1993." *Fierro*, 257 Kan. at 651. Any uncontested information may be considered to determine

what the actual conduct of the offender was. *Farris*, 259 Kan. 181, Syl. ¶ 3. Here, even though it was unnecessary for the State to prove an intent to cause great bodily harm for Whitaker to be convicted of aggravated battery against a law enforcement officer, if the facts show such an intent Whitaker's crime may be assigned a severity level of 3 based on that intent.

The same judge presided over Whitaker's trial, sentencing, and resentencing. The judge was familiar with the facts of the case. Whitaker's testimony at trial was that his codefendant, Neal, instructed one of the victims to drive slowly toward a dumpster and that Neal got out of the car and started shooting. Other testimony also showed that Neal directed the victim to drive next to the police officer and slow down. The official version of the incident contained in the presentence report states: "Whitaker told Detective Mervosh that Neal shot at the officer, trying to kill him by firing a big .45 caliber automatic handgun." At the resentencing hearing, the judge noted:

"Mr. Neal should not have perceived that his own safety was in jeopardy. He just wanted to avoid detention or apprehension, feeling as though one of the victims getting away, that they were on the verge of being apprehended by a police officer, believing the only way to head that off was just to shoot the police officer. And it's nothing but luck that the officer wasn't killed. The bullets just didn't happen to end up in the right place. I don't think it was any magical shooting on the part of Mr. Neal, that he just happened to hit the officer in a non vital area. It was just a matter of luck that is what happened."

Our criminal code does not define great bodily harm. In *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984), this court stated:

"Bodily harm has been defined as 'any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner.' [Citation omitted.] The word 'great' distinguishes the bodily harm necessary in [the offense of aggravated battery] from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery."

See *People v. Lopez*, 222 Cal. Rptr. 83, 176 Cal. App. 3d 460 (1986) (through and through gunshot wound to thigh was great bodily injury for enhancement statute); *cf. People v. Watkins*, 243 Ill. App.

3d 271, 277-78, 611 N.E.2d 1121 (1993) (no great bodily harm for aggravated battery conviction where bullet only grazed victim and did not draw blood).

Whether bodily harm is great is generally a question of fact for the jury, not the trial judge. See *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 (1978); *State v. Ochoa*, 20 Kan. App. 2d 1014, 1020, 895 P.2d 198 (1995). Here, however, where the determination of great bodily harm is made in the context of classifying the severity level of a crime, the trial judge is required to explore that question and determine if great bodily harm occurred.

Did great bodily harm occur? The facts indicate that Neal had an intent to cause great bodily harm. The police officer received a "through and through" wound to his right arm, although a more damaging injury could have occurred had the officer been hit in a more vital area of his body or if the bullet had struck a bone. The officer missed 3 days of work as a result of his injury. The officer here suffered more than a mere bruise or scratch. The sentencing judge properly classified Whitaker's offense as a severity level 3 crime based on the intent to cause great bodily harm.

Affirmed.