NOT DESIGNATED FOR PUBLICATION

No. 122,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WAYNE E. MILLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed November 20, 2020. Affirmed.

*Chris Biggs*, of Knopp and Biggs, P.A., of Manhattan, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Wayne E. Miller appeals his conviction for aggravated battery after hitting his daughter's boyfriend with a metal pipe. Miller contends that insufficient evidence supports his conviction and that the district erred in instructing the jury. Finding no error, we affirm.

*Factual and Procedural History*

This case arose from Miller's involvement in an argument on January 29, 2019, between his adult daughter, Mary Heller, and Heller's live-in boyfriend, Steve McIntyre.

1

Heller, who was around seven months pregnant, and McIntyre lived in an apartment next to Miller. Miller is in his late 60's, walks with a cane or walker, and has some nerve damage and other ailments from having had a stroke. He was not, however, using a cane or walker during the incident that gave rise to his conviction.

*The Incident*

During an argument with McIntyre, Heller fell and hit her head on the edge of a coffee table, cutting her face. She went next door to her father's apartment to clean the cut and calm down.

Miller asked Heller what had happened. She responded that she and McIntyre had had an argument and she had tripped and fallen. As Heller returned to her own apartment, Miller followed her. He threatened to call her brother if he found out that McIntyre had hit her. Heller yelled back that McIntyre had not harmed her.

McIntyre heard Heller yelling and went out to investigate. Miller saw McIntyre and told him that he was going to "bust" McIntyre "in [his] mug." Miller swung a fist at McIntyre but missed, grabbing McIntyre's shirt and causing it to tear as he fell to his knees. Miller then stood up and retreated to his own apartment.

A short time later, however, Miller got a metal pipe from between their apartments and approached McIntyre's truck. Heller saw him, ran out of her apartment, and pleaded with her father not to hit the truck or otherwise "go after" McIntyre. Heller explained that if Miller did so, McIntyre would never let him see her or her children again. McIntyre heard them talking, went to see what was going on, and saw Miller standing near his vehicle with the pipe. Miller and McIntyre began arguing again, exchanging profanities and calling each other names. Miller then swung the pipe "like a baseball bat," using both

2

hands, hitting McIntyre with the metal pipe on his ribcage. McIntyre retreated to his apartment and called the police.

*Police Intervention*

Officer Paul Bishop arrived at McIntyre's apartment and interviewed the couple. Bishop noted that McIntyre's shirt was ripped and that he had a "long linear abrasion and bruise" along his left ribcage. Bishop found the injury consistent with being hit by an object. Bishop saw the cut on Heller's face and asked how she had gotten it. Heller showed him where she had tripped over toys, fallen, and hit her head on a coffee table. Before leaving, Bishop checked McIntyre's hands for evidence that he had been involved in a fight but found no marks.

Next, Bishop interviewed Miller. He noted that Miller had multiple cuts, scrapes, and bruises on his face. Miller eventually told the officer that he had tried to break up a fight between McIntyre and Heller. Miller said that McIntyre had hit Heller and had later called Miller a "child molester" and "baby raper [sic]." He admitted that he had told McIntyre he was going to "kick his ass" and had summoned McIntyre outside. When Bishop told Miller that McIntyre had accused him of hitting him "one time" with a pipe or a stick, Miller replied, "[T]hat's the only time I did hit him." When asked where the pipe was, Miller told Bishop he could find it outside his front door. Bishop located the pipe there, kept it, and placed Miller under arrest. Miller was later treated for a concussion and got stitches for a torn lip.

*Trial and Pretrial Proceedings*

The State charged Miller with aggravated battery and disorderly conduct. Miller filed a motion for self-defense immunity. See K.S.A. 2019 Supp. 21-5224(a)(1)(A) and

3

(B). The district court denied that motion after a hearing, and Miller's case proceeded to a jury trial.

At trial, McIntyre, Heller, and Bishop testified consistently with the facts above. McIntyre and Heller maintained that McIntyre had not caused Heller's injury but that Heller had accidentally slipped on toys and had fallen. The State admitted photos of McIntyre's and Heller's injuries, the pipe used to hit McIntyre, and a black and white photo of the pipe.

Miller did not testify but the State admitted photos of his injuries. Bishop testified that Miller had told him that McIntyre caused those injuries by hitting him. Miller had also told Bishop that during their initial confrontation, McIntyre dragged Miller into McIntyre's apartment. Bishop was unsure who had initiated the first argument between Miller and McIntyre.

The district court instructed the jury to consider both aggravated battery and the lesser included offense of simple battery. During closing statements, the State argued that by using a pipe to hit McIntyre, Miller could have inflicted great bodily harm, so he was guilty of aggravated battery. In contrast, defense counsel argued that although a simple battery may have occurred, aggravated battery did not. The jury found Miller guilty of aggravated battery and disorderly conduct.

Before sentencing, Miller filed a motion for a downward dispositional departure from a presumptive prison term of at least 27 months. Miller asked for a 24-month probation sentence. The district court partially granted Miller's request, sentencing him to a durational departure of 14 months in prison.

Miller timely appeals.

4

*Sufficient Evidence Supports Miller's Conviction.*

Miller first challenges the sufficiency of the evidence supporting his aggravated battery conviction. He contends that the State failed to show that he used the metal pipe in a way that could cause "great bodily injury, disfigurement or death," as the statute requires. See K.S.A. 2019 Supp. 21-5413(b)(1)(C).

In reviewing this issue, we ask whether, after reviewing all the evidence in a light most favorable to the State, we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018). To the extent this issue raises a matter of statutory interpretation, we exercise unlimited review over that question of law. *State v. Thomas*, 311 Kan. 905, 916, 468 P.3d 323 (2020).

*Legal Analysis*

The jury convicted Miller of aggravated battery. See K.S.A. 2019 Supp. 5413(b)(1)(C). This statute provides that a person is guilty of committing aggravated battery by knowingly causing "physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2019 Supp. 21-5413(b)(1)(C). Our appellate courts have defined "great bodily harm" as being more than the slight, trivial, minor, or moderate harm—such as bruising—that is likely to be sustained by simple battery. *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 (2006).

Consistent with that statute, the district court instructed the jury that to prove aggravated battery, the State needed to establish the following elements:

"1. The defendant knowingly caused physical contact with Stephen McIntyre in a rude, insulting or angry manner and in any manner whereby great bodily harm, disfigurement or death can be inflicted.

"2. This act occurred on or about the 29th day of January 2019, in Clay County, Kansas.

"The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about, or of the circumstances in which he was acting, or that his conduct was reasonably certain to cause the result complained about by the State."

The district court also instructed the jury on the lesser included offense of simple battery. That instruction stated if the jury does not agree that the defendant is guilty of aggravated battery, it should then consider the lesser included offense of battery. To establish battery, the State must prove that Miller knowingly caused bodily harm to McIntyre on or about January 29, 2019, in Clay County, Kansas.

The court also gave an instruction defining "bodily harm" and "great bodily harm":

"As used in these instructions, the term 'bodily harm' means any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner.

"As used in these instructions, the term "great" distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm."

Miller concedes that the State proved that he hit McIntyre with a metal pipe, but he argues that the State did not meet its burden to prove that he did so in a manner whereby great bodily harm, disfigurement, or death can be inflicted. Miller asserts that the State could not meet this burden without proving that McIntyre suffered a serious

6

injury or was hit on an area of his body where serious injury was likely. See K.S.A. 2019 Supp. 21-5413(b)(1)(C).

The State correctly argues that it did not have to prove Miller suffered "great bodily injury, disfigurement or death." Instead, the relevant statutes required the State to establish that Miller acted with an awareness that his conduct was "reasonably certain"— K.S.A. 2019 Supp. 21-5202(i)—to cause "physical contact" which "can" cause "great bodily harm, disfigurement or death." K.S.A. 2019 Supp. 21-5413(b)(1)(C). So the State was not required to establish that McIntyre suffered great bodily harm or that Miller intended to inflict the harm that resulted. See *State v. Hobbs*, 301 Kan. 203, 212, 340 P.3d 1179 (2015) (announcing rule in a case challenging the sufficiency of a conviction under K.S.A. 2011 Supp. 21-5413[b][1][A]); *State v. Harris*, No. 116, 141, 2017 WL 4848542, at *3 (Kan. App. 2017) (unpublished opinion) (applying rule announced in *Hobbs* to address an appellant's challenge to his conviction under K.S.A. 2012 Supp. 21-5413[b][1][B]).

Unlike subsections (b)(1)(A) and (B), K.S.A. 2019 Supp. 21-5413(b)(1)(C) prohibits the act of "physical contact," instead of the act of "causing great bodily harm" or "bodily harm." Compare K.S.A. 2019 Supp. 21-5413(b)(1)(C) to K.S.A. 2019 Supp. 21-5414(b)(1)(A); see *Hobbs*, 301 Kan. at 211 (noting act prohibited by subsection [b][1][A] is "causing great bodily harm . . . or disfigurement" and ultimately finding the State needed to prove accused acted aware that "some type" of great bodily harm or disfigurement was reasonably certain to result from action); *State v. Patrick*, No. 116,660, 2018 WL 4373053, at *6 (Kan. App. 2018) (unpublished opinion) (noting pertinent distinction between K.S.A. 2015 Supp. 21-5413[b][1][A] and K.S.A. 2015 Supp. 21-5413[b][1][B] was proof of knowingly causing great bodily harm versus bodily harm in addressing lesser included instruction claim), *rev. denied* 309 Kan. 1352 (2019); but see *Hobbs*, 301 Kan. at 210 (requiring State to prove that a defendant charged with aggravated battery acted knowingly with regard to all of the material elements of the

crime). Although the evidence showed that McIntyre's injury was minor, the State still presented enough evidence to support the jury's conclusion that Miller's actions could have caused a harm consistent with an aggravated battery under K.S.A. 2019 Supp. 21-5413(b)(1)(C).

We are also persuaded that State presented sufficient evidence to establish Miller committed aggravated battery in the manner charged. That Miller hit McIntyre with a metal pipe was uncontested. Miller argues that the State did not present evidence of the physical characteristics of the pipe. But Heller described the pipe as a "steel pipe", and the State admitted the pipe into evidence so the jury could assess its characteristics during deliberations. The State also presented evidence that before he hit McIntyre with the pipe, Miller engaged in a heated argument in which the men exchanged profane name-calling and accusations of physical and sexual abuse. McIntyre testified that Miller warned him to take his dentures out because Miller planned to hit him in his face. Bishop testified that Miller admitted that after grabbing the metal pipe, Miller summoned McIntyre to come outside and then threatened to physically harm him. This implies Miller was the aggressor and that he planned to engage in some form of violent, physical contact with McIntyre. Taken together, this evidence sufficiently supports Miller's aggravated battery conviction. See *State v. Kemp*, No. 119,069, 2019 WL 985427, at *3-4 (Kan. App.) (unpublished opinion) (finding sufficient evidence supported a conviction under K.S.A. 2017 Supp. 21-5413[b][1][C] where evidence showed defendant burned her husband with a hot iron but did not establish the extent of the husband's injury), *rev. denied* 310 Kan. 1067 (2019).

Miller maintains that the State needed something more to establish that the manner in which Miller hit McIntyre could have caused an injury grave enough to satisfy the statute. Miller emphasizes that the State did not show that "[t]he blow was to the head" or that it resulted in "permanent scarring, broken bones, etc." Relatedly, Miller points out that he was not charged with aggravated battery based on the use of a deadly weapon and

8

suggests that the State could not rely on the use of the pipe as a weapon without proving that it was a deadly weapon. But even if the State's case could have benefitted from evidence showing that Miller's injuries were more substantial, the extent of Miller's injury was not an element that the State had to prove. See *Kemp*, 2019 WL 985427, at *4.

Whether a defendant's actions can cause great bodily harm is a question for the jury. *Green*, 280 Kan. at 765; *State v. Curreri*, 42 Kan. App. 2d 460, 465-66, 213 P.3d 1084 (2009); see also *State v. Morton*, 38 Kan. App. 2d 967, 972-73, 174 P.3d 904 (2008) (whether biting an individual could inflict great bodily harm or disfigurement was a question for the jury). The court instructed the jury on the lesser included offense of simple battery. In making its decision, the jury had the chance to assess the physical characteristics of the pipe Miller used to hit McIntyre. The jury thus considered the lesser included offense of simple battery but still convicted Miller of aggravated battery based on the evidence.

The evidence at trial, taken together and viewed in a light favoring the State, supports Miller's conviction. A rational fact-finder could have found Miller guilty of aggravated battery under K.S.A. 2019 Supp. 21-5413(b)(1)(C) beyond a reasonable doubt.

*The District Court Did Not Commit Instructional Error.*

Next, Miller argues the jury instruction defining "great bodily harm" was legally inappropriate because it failed to tell the jury that "mere bruising" is generally not great bodily harm.

*Preservation and Standard of Review*

When a defendant alleges that a jury instruction is erroneous, we apply a multistep process. First, we consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review. Next, we use unlimited review to determine whether the instruction was legally appropriate. Then, we determine whether sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, supported the instruction. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). And finally, if the district court erred, we conduct a reversibility inquiry. The standard for that inquiry depends on whether the defendant objected to the instruction during the trial. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

Miller concedes that he did not object to this instruction during trial. Instead, the record shows he agreed to it. So the district court's failure to give a legally and factually appropriate instruction is reversible only if that failure was clearly erroneous. See K.S.A. 2019 Supp. 22-3414(3); *Butler*, 307 Kan. at 845. To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.'" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In determining clear error, we review the effect of the erroneous instruction in light of the entire record, including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

*Initial Matter*

Before addressing Miller's claim about the bodily harm instruction, we note that Miller also alleges the district court failed to include the phrase "with a deadly weapon" in the instruction for aggravated battery under K.S.A. 2019 Supp. 21-5413(b)(1)(C). But

Miller raised that issue only incidentally, so we do not engage in an in-depth analysis of the claim. We note, however, that a panel of this court recently rejected a similar claim. See *State v. Green*, 55 Kan. App. 2d 595, 609, 419 P.3d 83 (2018), *rev. denied* 309 Kan. 1351 (2019). This issue does not compel a reversal of Miller's conviction.

*Legal Analysis*

Miller challenges the following instruction as being incomplete and thus legally erroneous:

> "As used in these instructions, the term 'bodily harm' means any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner.
> "As used in these instructions, the term 'great' distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm."

This instruction is consistent with—though not identical to—the comment to Pattern Instructions for Kansas (PIK) Crim. 4th 54.310. That comment states that great bodily harm does not include mere bruises:

> "The Supreme Court has frequently indicated the difference between bodily harm and great bodily harm. Bodily harm has been defined as any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner. The word 'great' distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery. See *State v. Whitaker,* 260 Kan. 85, 917 P.2d 859 (1996)."

The instruction omitted the second half of the final sentence and thus did not include language addressing "mere bruises." But a comment to a PIK instruction is not part of the PIK instruction itself.

Miller argues that the following instruction approved in *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017), approved the comment's language and states the law more accurately than does the challenged instruction:

> "'As used in these instructions, bodily harm has been defined as any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner. The word "great" distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm, *and as such it does not include mere bruises*.'" (Emphasis added.)

*Robinson* found that the instruction's definition aligned with caselaw and with the comment to the relevant PIK instruction:

> "We have defined 'bodily harm' as '"any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner."' *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984); *State v. Livingston*, 272 Kan. 853, 859, 35 P.3d 918 (2001). Furthermore, we have defined 'great bodily harm' as 'more than slight, trivial, minor, or moderate harm, [that] does not include mere bruising, which is likely to be sustained by simple battery.' *State v. Green*, 280 Kan. 758,765, 127 P.3d 241 (2006); *Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

> "Furthermore, the definition of bodily harm in the comment to PIK Crim. 3d 56.18 (2009 Supp.) is identical to instruction 11, except for one slight deviation—the comment states that '[t]he word "great" distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, *which are likely to be sustained in simple battery*.' (Emphasis added.)" 306 Kan. at 1027.

12

Besides finding the instruction legally appropriate, the *Robinson* court found the instruction was also factually appropriate given substantial evidence that the victim sustained serious injuries. 306 Kan. at 1028.

We agree that a definition instruction was both legally and factually appropriate. We do not find, however, that the instruction Miller challenges was legally erroneous. Instead, we find that under these particular facts, the instruction was legally and factually appropriate.

First, Miller does not sufficiently argue that the instruction was erroneous. Instead, Miller simply quotes the definition of "great bodily harm" from *Green*, 280 Kan. at 765, and then emphasizes that a similar instruction was approved in *Robinson*. But those decisions do not require district courts to provide the exact definition *Robinson* accepted. Instead, trial courts are required to provide a definition for "great bodily harm" that follows applicable law. See 306 Kan. at 1027-28. Miller also fails to focus his argument on the specific language of K.S.A. 2019 Supp. 21-5413(b)(1)(C). We thus find Miller's argument conclusory and unpersuasive.

The district court's instruction provided the jury with accurate and sufficient guidance on applicable law. The instruction mirrored the language of Kansas caselaw and the comment to PIK Crim. 4th 54.310, though without the language regarding bruising. The instruction put the jury on notice that great bodily harm differs from bodily harm in that it is not "slight, trivial, minor or moderate." So although it did not provide the example of "mere bruises," it still provided the jury with the necessary differentiation. See *Green*, 280 Kan. at 765; cf. *State v. McCormick*, 37 Kan. App. 2d 828, 846, 159 P.3d 194 (2007) (approving instruction defining "bodily harm" element of aggravated kidnapping that omitted the final sentence provided in the notes to the relevant PIK instruction based on prejudice to the State).

13

Second, under the particular facts of this case, the district court appropriately excluded the "mere bruising" language from the definition instruction. In *State v. Brice*, 276 Kan. 758, 771, 80 P.3d 1113 (2003), our Supreme Court held that the district court "erred when it gave a jury instruction defining 'great bodily harm' as a 'through and through bullet wound' because the uncontroverted evidence showed the defendant inflicted such a wound, leaving no room for the jury to find that element beyond a reasonable doubt." *Robinson*, 306 Kan. at 1027-28. Although the *Robinson* court found that *Brice* did not apply to Robinson's case, it does apply here.

Had the district court given an instruction that defined simple battery as "mere bruises" and thus said that bruising cannot support an aggravated battery conviction under K.S.A. 2019 Supp. 21-5413(b)(1)(C), it would have risked directing the jury's verdict in the same manner prohibited in *Brice*. *Brice* found that the error of defining aggravated battery as a "through and through bullet wound" was tantamount to directing a verdict for the prosecution, a result that is condemned by the United States Constitution. 276 Kan. at 770. Adding the "mere bruises" language Miller desires is like directing a verdict in his favor, as that would have removed an element of the crime from the jury's consideration—whether Miller's action of hitting McIntyre with a pipe could result in great bodily harm.

We conclude that the district court did not err in giving the instruction that Miller challenges.

Affirmed.

14