The Honorable Janice L. Hardenburger State Senator, 21st District Route 1, Box 78 Haddam, Kansas 66944
Dear Senator Hardenburger:
You request our opinion concerning whether the county commissioners of seven counties in northeast Kansas may lawfully appoint the board members of an area agency on aging which is structured as a private, nonprofit corporation, and whether the commissioners may control the votes of their appointees. You also ask whether the actions of Northeast Kansas Area Agency on Aging, Inc. constitute state action as defined by 42 U.S.C. § 1983
because of the participation of county commissioners in the appointment process and internal affairs of the agency.
You provided a copy of the bylaws of Northeast Kansas Area Agency on Aging, Inc. (NEKAAA) which include the following provisions:
 "The purpose of NEKAAA is to be an Area Agency on Aging as defined in the Older Americans Act of 1965 ( 42 U.S.C. § 3001 et seq.) as amended and to carry out all of the duties and requirements of an area agency on aging in the seven county NEKAAA planning and service area. [Article II, Section 1.]
. . .
 "The business and affairs of NEKAAA shall be administered by a Board of twenty-one Directors. The Board of Directors can form necessary committees at its discretion. Directors shall be seated for terms of three years and shall serve until the designation of their successors as confirmed by a letter from the appropriate county commission. [Article IV, Section 1.]
"The Board of Directors will be selected as follows:
 "A) There will be three Directors from each county in the planning and services area of NEKAAA.
 "B) One Director from each county will be selected annually by the County Council on Aging and confirmed by the county commission in writing to the NEKAAA.
 "C) Directors shall rotate their terms so that no more than seven nor less than six shall begin their terms each year. [Article IV, Section 2.]
. . .
 "One Policy Board Director shall be selected annually from each County to serve a three-year term. County Commissions shall be notified, in writing, by the NEKAAA in February, naming the Board Director whose term will expire March 1. A Policy Board Director may serve consecutive terms subject to Section 7, this Article. [Article IV, Section 5.]
. . .
 "Any Director who misses three regular consecutive meetings without good cause shall be removed from the Board and the vacancy filled by a new Director selected in the same manner as was the Director who was removed. After missing two consecutive meetings, the absent Director shall be informed in writing by the Board of Directors at least two weeks before the third regular meeting. The Board Of Directors further has the right to remove a Director for cause when necessary to preserve the good order of NEKAAA. In such instances, the challenged Director shall receive the mailed written notice of the pending removal at least two weeks before the regular board of Directors meeting at which the Board of Directors will consider final action as to the Director's removal. [Article IV, Section 7.]
. . .
 "These by-laws may be amended by a two-thirds vote of the Board of Directors. . . . [Article XIII.]" (Emphasis added.)
As stated above, NEKAAA is an area agency as defined by the older Americans act of 1965. 42 U.S.C. § 3001 et seq. That act provides for comprehensive services for persons over 60 years of age and for funding those services. In order to receive federal funding for aging services and programs, the state secretary on aging is required to submit a state plan for approval by the federal commissioner on aging. In developing a state plan, the secretary on aging divides the state into planning and service areas and designates an area agency on aging for each planning and service area. Each area agency on aging develops and administers a comprehensive plan for its area subject to approval by the state secretary on aging. The state receives federal funding upon approval of the state plan by the federal commissioner on aging. The state secretary on aging distributes funds to the area agencies for funding the area plans. 42 U.S.C. § 3023-3029.
The older Americans act defines an area agency on aging as "a public or private nonprofit agency or organization" which the state secretary on aging designates to administer the plan of each service area within the state. 42 U.S.C. § 3025 (a) (2). The older Americans act does not define how an area agency is formed, leaving broad discretion to the state secretary on aging to approve various kinds of public and private nonprofit organizations as the secretary determines can best carry out the area plan.
The secretary has defined an area agency as follows:
 "`Area agency' or `area agency on aging' means the agency or organization within a planning and service area that has been designated by the secretary to develop, implement and administer a plan for the delivery of a comprehensive and coordinated system of services to older persons in the planning and service area." K.A.R. 26-1-1(a).
The regulations set out the duties of an area agency on aging but do not define how an area agency is created. K.A.R. 26-1-5 et seq.
With the grant of home rule powers, the legislature put matters of local administration into the hands of the counties without requiring them to have specific authorization from the state. K.S.A. 19-101 outlines the general powers of a county which include "[F]ifth, to exercise the powers of home rule to determine theirlocal affairs and government authorized under the provisions of K.S.A. 19-101a . . . ." (Emphasis added.)
Home rule allows counties to exercise all powers not denied by statute or the constitution. "Counties in Kansas are now empowered to transact all county business and perform such powers of local legislation and administration as may be appropriate, subject, however, to the restrictions and prohibitions set forth in K.S.A. 19-101a." Missouri Pacific Railroad v. Board ofGreeley County Commissioners, 231 Kan. 225, 226 (1982). In addition, the home rule powers vested in counties are to be "liberally construed for the purpose of giving to counties the largest measure of self-government." K.S.A. 19-101c.
We are aware of no statutes which prohibit a board of county commissioners from confirming appointments of directors to an area agency on aging. K.S.A. 19-2678
authorizes a board of county commissioners to establish and maintain service programs for the elderly. K.S.A.12-1680 provides a method for counties to levy a property tax to pay for services for the elderly, and K.S.A. 19-2106 et seq. authorizes counties to establish and maintain homes for the aged. These statutes demonstrate that services for the elderly are "local affairs" contemplated by K.S.A. 19-101 and K.S.A.19-101a(a), as amended by L. 1996, ch. 68, § 2. In our opinion confirming appointments of directors to an area agency on aging as prescribed by the area agency's by-laws falls into the broad powers of local administration granted to counties and therefore the boards of county commissioners of the seven counties comprising NEKAAA may, pursuant to the bylaws of NEKAAA, lawfully confirm appointments of the directors to NEKAAA.
You also ask whether any laws are violated when the county commissioners control the votes of these appointees to NEKAAA. The power given to the county commissioners arises solely from the bylaws of the NEKAAA, and not from any actions initiated by the county. The bylaws of NEKAAA do not give the board of county commissioners the right to amend or repeal those bylaws or to take any part in the management of NEKAAA's business and affairs. The power of managing the affairs of NEKAAA and amending the bylaws is specifically given to the board of directors in article IV, section 3. The directors, through their bylaws, have asked the county commissioners to confirm the appointments of their board members. That is the only power given to the board of county commissioners. There is no provision for the county commissioners to remove an appointee from office prior to the expiration of that person's term. The directors of NEKAAA may remove control from the county commissioners by amending their bylaws to eliminate the commissioners' confirmation powers. It is our opinion that as long as the bylaws give confirmation powers to the county commissioners, it is not unlawful for the commissioners to exercise those powers. Absent any laws to the contrary, any further control attempted by the county commissions is not legally binding on the area agency, but exists only to the extent allowed by the members of the board of directors.
Finally, you ask "whether the actions of the Northeast Kansas Area Agency on Aging can be considered as being taken `under color of state law' as that phrase is interpreted pursuant to 42 U.S.C. § 1983 due to the involvement of the County Commissioners in the internal affairs of the Area Agency." 42 U.S.C. § 1983 states in part:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."
Whether a particular act is subject to this provision "is a question of statutory interpretation and, thus, a question of law." Farris v. McKune, 259 Kan. 181 (1996) citing State v. Donlay, 253 Kan. 132, 133-34 (1993). After noting how the Supreme Court of the United States had approached the question of what constitutes government action, the tenth circuit court of appeals inGilmore v. Salt Lake Community Action Program, 710 F.2d 632,635 (10th Cir. 1983) concluded that:
 "These cases, taken together, impart at least two important principles. First, they recognize that power entrusted to the government by the people can ultimately be exercised through nominally private entities, be it through the government's delegation, compulsion, concerted action, or acquiescence. Second, they provide that when these nominally private parties exercise governmental power, they shall not exercise it insulated from constitutional constraints."
The court set out a two-part test for determining the existence of state action. First, the party charged with the alleged deprivation of a federal right must be one who may "fairly be considered a state actor."710 F.2d at 637. Second, the deprivation must have resulted "from the exercise of a right, privilege, or rule of conduct having its source in state authority."710 F.2d at 638. In other words, it must be "in some sense attributable to a governmental decision." Id. In applying this test, the essential task is to distinguish "the exercise of governmental power from benign or tangential governmental involvement . . . by `sifting facts and weighing circumstances' in each case."710 F.2d at 636 quoting Burton v. Wilmington ParkingAuthority, 365 U.S. 715, 722, 81 S.Ct. 856, 860,6 L.Ed.2d 45 (1961).
The first part of the test requires a determination of whether NEKAAA may be considered a state actor. A person may be considered a state actor "because he is a state official, he acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state." Gilmore, supra, at 635, quoting Lugar v. Edmondson Oil Co., 457 U.S. 922,936; 102 S.Ct. 2744, 2754 (1982). The second part of the test "requires not only a characterization of the party as a state actor, but also a finding that the alleged deprivation is related to a governmental objective." Gilmore, 710 F.2d at 638. If the alleged civil rights violation is not sufficiently related to a governmental objective, the second part of the test is not satisfied and there would therefore be no state action. As stated in Burton, supra, a determination of whether a person or group's actions meet both parts of the test must be decided on a case by case basis in light of the circumstances in each case. Absent specific facts, we are unable to provide an opinion on whether an action by NEKAAA would constitute state action under42 U.S.C. § 1983.
In summary, where the bylaws of an area agency on aging state that the board of directors of the agency shall be confirmed by the boards of county commissioners of the counties served by the area agency, the commissioners are authorized to make such confirmations in the exercise of the administrative power granted by the legislature under home rule statutes. County commissioners may exercise control over their appointees to the board of directors of Northeast Kansas Area Agency on Aging, Inc. to the extent permitted by the agency's bylaws. Whether an agency's actions constitute state action under 42 U.S.C. § 1983 must be determined on a case by case basis in light of the circumstances in each case.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm