NOT DESIGNATED FOR PUBLICATION

No. 125,769

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TREY L. GIBSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed June 28, 2024. Affirmed.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: The State appeals the Douglas County District Court's decision to grant Defendant Trey L. Gibson a dispositional departure to probation after he pleaded no contest to indecent liberties with a child between the ages of 14 and 16 years old. For the first time on appeal, the State contends the district court could not depart to probation because the circumstances made the crime one of "extreme sexual violence" under K.S.A. 21-6818(a). But the statutory designation and the resulting limitation on sentencing require a factual finding the district court was never asked to make, and the record would not have supported the finding. The State alternatively argues the district court's decision

1

to depart from the sentencing guidelines amounted to an abuse of judicial discretion. But our review of a discretionary determination is exceptionally deferential. The State's points are legally insufficient for us to disturb the district court's reasoned, if notably lenient, determination. We, therefore, affirm the departure sentence in all respects.

FACTUAL AND PROCEDURAL HISTORY

The encounter giving rise to this case happened sometime in January 2021, when Gibson was 19 years old and K.P. was almost 15 years old. The two had met before and apparently communicated sporadically through social media. They agreed to meet in a park in Lawrence, ostensibly to smoke marijuana. K.P. later accused Gibson of forcibly raping and sodomizing her. But, as we explain, the specific circumstances did not come to the attention of law enforcement for almost six months.

In May 2021, Gibson's then-girlfriend discovered messages on his phone indicating he had been sexually intimate with K.P. Upset and angry, Gibson's girlfriend communicated with K.P., who confirmed she and Gibson had had sex. From social media posts, the girlfriend determined that K.P. was about 15 years old. Gibson's girlfriend confronted him, and he admitted having sex with K.P. Later that day, all three of them met at a bar in Lawrence, and Gibson repeated his admission. At some point, K.P. characterized the encounter as a rape in communicating with Gibson's girlfriend, although the messages the girlfriend saw on Gibson's phone did not. The girlfriend ended her relationship with Gibson.

In June, Gibson's former girlfriend contacted the Kansas Department for Children and Families to report that Gibson had been having sexual relations with a 15-year-old girl. The Department requested the Lawrence Police Department's assistance in investigating the report. The assigned police officer spoke with the former girlfriend and later with K.P. In the police interview, K.P. described meeting Gibson at the park and

2

getting in his car. He then showed her a shotgun he had in the backseat. According to K.P., they drove to the third floor of a parking garage in downtown Lawrence. She described Gibson physically forcing her to fellate him, groping her breasts, and then forcibly having sexual intercourse with her. The police officer unsuccessfully tried to set up an interview with Gibson.

Based on the investigation, the Douglas County District Attorney's office charged Gibson in mid-July with two counts of aggravated indecent liberties with a child between the ages of 14 and 16 years old, one a severity level 3 person felony and the other a severity level 4 person felony, and one count of sodomy with a child between the ages of 14 and 16 years old, also a severity level 3 person felony. K.P. and Gibson's former girlfriend testified at a preliminary hearing on November 17. Pertinent here, K.P.'s testimony essentially matched what she had told the investigating police officer.

The district attorney's office filed three amended complaints between November 10 and December 6, 2021. In the last, Gibson was charged with one count of rape, a severity level 1 person felony, in the alternative with aggravated indecent liberties with a child between the ages of 14 and 16 years old; one count of aggravated criminal sodomy, a severity level 1 person felony, in the alternative with criminal sodomy; one count of aggravated indecent liberties with a child between the ages of 14 and 16 years old; and one count of kidnapping, a severity level 3 person felony.

The district attorney's office and the lawyer representing Gibson worked out an agreement that called for Gibson to plead no contest to one count of indecent liberties with a child between the ages of 14 and 16 years old based on the statutory element of "lewd fondling or touching" and one count of criminal threat, a severity level 9 person felony. See K.S.A. 21-5506(a)(1) (elements of indecent liberties). The district attorney's office agreed to recommend concurrent sentences on the two counts, and each side was otherwise free to argue for any lawful sentence.

3

At the plea hearing in April 2022, the district attorney's office presented an amended complaint conforming to the charges identified in the written plea agreement. During the hearing, Gibson acknowledged and waived various constitutional and statutory rights he had as a criminal defendant, and the district court outlined the potential penalties he faced. Gibson then pleaded no contest to the two charges in the amended complaint. When the district court requested a proffer of the factual basis for the pleas, the assistant district attorney pointed out that there had been a preliminary hearing and asked the district court to take notice of the testimony and other evidence presented then. The assistant district attorney did not otherwise describe the basis for the plea. The district court then asked Gibson's lawyer, "Do you agree that the State could produce witnesses and evidence to support the factual allegations, and if not contested by your client he could be found guilty beyond a reasonable doubt?" The lawyer so agreed. The district court accepted the pleas and found Gibson guilty of the charges in the last amended complaint.

At the sentencing hearing about two months later, the parties agreed Gibson had a criminal history of B. The presentence investigation report showed Gibson had been adjudicated in juvenile court for what would have been a felony sex offense and a misdemeanor sexual battery if committed by an adult. That misdemeanor adjudication was aggregated with two other misdemeanor adjudications for battery to be scored as the equivalent of a felony in Gibson's criminal history. Gibson had two other misdemeanor adjudications that did not affect his criminal history score. As a result, the indecent liberties conviction carried a standard guidelines sentence of 120 months in prison with a presumption for incarceration followed by lifetime postrelease supervision. Gibson filed a motion for a dispositional departure to probation and, alternatively, for a durational departure to a shorter prison sentence.

Gibson called his adoptive father and Dr. Gregory Nawalanic, a clinical psychologist, as witnesses. The evidence showed that Gibson had been chronically

abused physically and emotionally—often with a sexual component—before he was adopted at about five years old. His adoptive father described Gibson as being close to "feral" at first and gave as examples that he didn't use tableware when eating and that his speech was difficult to understand. His adoptive father said a therapist Gibson saw then offered a grim prognosis suggesting the child would be unlikely to function in a typical classroom or graduate from high school and would have, at best, limited employment prospects as an adult. But Gibson was mainstreamed in elementary school and graduated from high school on time. His adoptive father acknowledged Gibson had problems along the way, as reflected in his juvenile court record. But his adoptive father said Gibson had a supportive family and community network and had recently begun to accept responsibility for his actions and to interact more constructively with family members and friends.

Dr. Nawalanic examined Gibson and testified he was amenable to treatment outside a prison environment and had begun to develop an awareness of the wrongfulness of his conduct. Given the sort of early childhood abuse Gibson experienced, Dr. Nawalanic suggested the therapy regimens offered him through the juvenile court system were less than optimal because of repeated turnover among the mental health professionals. An actuarial test Dr. Nawalanic administered showed Gibson to be at an above average risk of reoffending. But Dr. Nawalanic testified that the test's scoring protocol tends to skew higher for youthful offenders.

The assistant district attorney called Gibson's juvenile probation officer to testify about the multiple services that were available to Gibson and the counseling and other help he received through that system. The assistant district attorney also read a written statement from K.P. describing the psychological trauma she continued to experience as a result of the encounter with Gibson. In the statement, she also indicated the sexual acts were not voluntary. Pertinent to the issues on appeal, the assistant district attorney did not

argue that the district court lacked the legal authority to grant a dispositional departure to probation. Rather, he contended the circumstances did not justify a departure.

The district court granted Gibson's motion for a dispositional departure to probation on the indecent liberties conviction, citing his youth and lack of maturity; his history as a victim of physical, sexual, and psychological abuse; his general mental health; and his strong family and community support. The district court ordered an extended probation of 60 months. See K.S.A. 21-6608(c)(6). The district court imposed an underlying prison sentence of 120 months on the conviction for indecent liberties with a child with mandatory lifetime postrelease supervision and a consecutive 6-month sentence on the criminal threat conviction. The indecent liberties conviction also requires Gibson to comply with the Kansas Offenders Registration Act for 25 years. See K.S.A. 22-4906(b)(1)(E).

The State has appealed the district court's decision to grant Gibson a dispositional departure to probation on the indecent liberties with a child conviction.

ANALYSIS

The State or a defendant may appeal a departure sentence. K.S.A. 21-6820(a). We, therefore, have jurisdiction. As we have indicated, the State now argues the district court lacked the legal authority to grant Gibson a dispositional departure to probation on the indecent liberties with a child conviction. The State alternatively argues that if the district court had such authority, its exercise in this case amounts to an abuse of discretion. We take those points up in turn. In the interest of completeness, we mention that the criminal threat conviction also carried a presumptive prison term given Gibson's criminal history. Although the district court granted a departure to probation on that conviction as well, the district attorney's office has not appealed that ruling.

6

*District Court's Authority to Depart*

On appeal, the district attorney's office contends the district court could not have ordered probation for Gibson under K.S.A. 21-6818(a). The statute precludes a district court from granting a dispositional departure to probation "for any crime of extreme sexual violence" as defined in K.S.A. 21-6815. K.S.A. 21-6818(a). In turn, the district attorney's office relies on K.S.A. 21-6815(c)(2)(F)(i)(a) that treats "[a] crime involving a nonconsensual act of sexual intercourse or sodomy" as one of extreme sexual violence. If the argument were correct, then Gibson would have received an illegal sentence that could be challenged for the first time on appeal. K.S.A. 22-3504(a) (illegal sentence may be corrected "at any time"); K.S.A. 22-3504(c)(1) ("'Illegal sentence'" includes punishment that "does not conform to the applicable statutory provision.").

The argument suffers from interlocking problems. First, the district attorney's office cites a definition of a crime of extreme sexual violence that requires a factual finding the offense involved an involuntary act of sodomy or sexual intercourse. But the district court was never asked to make that finding and did not do so. Second, the district court record does not support such a finding. The district attorney's office cites and relies exclusively on the Kansas Supreme Court's recent decision in *State v. Newman-Caddell*, 317 Kan. 251, 527 P.3d 911 (2023), to support its position. The case is inapposite.

In *Newman-Caddell*, the court recognized that in a given case, the crime of conviction may be considered one of extreme sexual violence even though the statutory elements do not require an involuntary act of sexual intercourse or sodomy if the defendant admits to a factual basis establishing that misconduct. 317 Kan. at 262. There, the State requested an upward durational departure based on Brady Newman-Caddell's guilty plea to aggravated kidnapping because the criminal conduct included the abduction and forcible rape of the victim. The State contended that under the circumstances the crime was one of extreme sexual violence—an aggravating factor permitting an enhanced

7

sentence under K.S.A. 21-6815(a). In conjunction with his guilty plea, Newman-Caddell stipulated to facts supporting the aggravating factor the State intended to rely on at sentencing. 317 Kan. at 254.

Here, Gibson neither pleaded guilty nor admitted to particular historical facts associated with the charged crime as part of his no-contest plea. Given those circumstances, the rule outlined in *Newman-Caddell* does not apply here. The district court could not have concluded Gibson's conviction for indecent liberties with a child between the ages of 14 and 16 years old based on lewd fondling or touching necessarily "involved" involuntary sexual intercourse or sodomy, thereby making the conviction one of extreme sexual violence.

Without further explanation, the district attorney's office suggests that gap may be bridged using the transcript of the preliminary hearing because it furnished the factual basis the prosecutor proffered to support Gibson's no-contest plea. The representation, however, misapprehends the scope and legal effect of the State's proffer to a district court supporting a no-contest plea.

The Kansas Supreme Court has recognized that the district court's acceptance of the State's proffer does not constitute the defendant's admission of the recited factual basis. *State v. Case*, 289 Kan. 457, Syl. ¶ 4, 213 P.3d 429 (2009). Rather, the proffer simply shows the State could present the described evidence that, if unchallenged, would prove the charge. The defendant essentially acknowledges such evidence could be produced but does not agree to its accuracy. 289 Kan. at 461-63. In turn, the district court accepts the proffer for the limited purpose of establishing a factual basis to accept the plea and to find the defendant guilty. 289 Kan. at 464-65; see K.S.A. 22-3210(a)(4) (district court must be "satisfied that there is a factual basis" for plea of guilty or no contest).

8

But the proffer does not then become a set of proved or admitted facts that can otherwise be attributed to or used against the defendant. 289 Kan. at 466 ("In an *Alford* plea, failure or even refusal to object to the presented facts or to put on evidence does not equate to an admission of facts and does not empower the trial court to make findings based upon those purported admissions[.]"); see *Farris v. McKune*, 259 Kan. 181, 194, 911 P.2d 177 (1996). Although *Case* involved an *Alford* plea where a defendant pleads guilty without admitting guilt, the court pointed out that the State's factual proffer serves the same purpose and has the same effect as a proffer supporting a no-contest plea. 289 Kan. at 461. Moreover, in *Farris*, the court recognized that a no-contest plea and the resulting finding of guilty constituted no more than an admission of the "well-pleaded facts" of the charging instrument "for purposes of the case." 259 Kan. at 194; see *Cranford v. State*, 39 Kan. App. 2d 12, 16, 176 P.3d 972 (2008) (relying on *Farris*). The *Farris* court drew that rule from *State v. Colston*, 20 Kan. App. 2d 107, 114-15, 883 P.2d 1231 (1994), and *Colston*'s review of other case authority and K.S.A. 22-3209(2), governing the legal effect of a no-contest plea.

Here, Gibson's no-contest plea and adjudication of guilt could be considered at the sentencing hearing only to establish he had "engage[d] in any lewd fondling or touching" of K.P., as charged in the fourth amended complaint. Lewd fondling or touching for purposes of K.S.A. 21-5506 entails a touching that is "sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious" and, thus, encompasses physical contact other than involuntary sexual intercourse or sodomy. *State v. Dinh Loc Ta*, 296 Kan. 230, Syl. ¶ 5, 290 P.3d 652 (2012) (defining legally indistinguishable provision in predecessor statute criminalizing aggravated indecent liberties with a child); see *State v. Russ*, No. 124,233, 2023 WL 3402858, at *7 (Kan. App. 2023) (unpublished opinion) (applying definition from *Dinh Loc Ta* in prosecution under K.S.A. 21-5506).

In short, even if the district attorney's office had argued to the district court that it could not grant a dispositional departure to probation—though it made no such argument—the record did not include evidence or a binding admission that would have permitted a factual finding that Gibson's crime of conviction "involved" involuntary sexual intercourse or sodomy, rendering it one of extreme sexual violence. The record before us, of course, is likewise deficient. Accordingly, we decline to reverse the departure sentence based on the argument K.S.A. 21-6818(a) imposes a factually supported bar.

*District Court's Discretion to Depart*

As an alternative basis to reverse, the district attorney's office contends the district court abused its discretion in granting Gibson a dispositional departure to probation. We recently outlined the framework governing a district court's decision to impose a departure sentence this way:

> "In K.S.A. 2022 Supp. 21-6815(c)(1), the Legislature has listed mitigating factors a district court may consider in granting a departure sentence. The statute describes the list as 'nonexclusive,' so a district court may depart from the sentencing guidelines for other reasons warranting mitigation. In reviewing a district court's reliance on a statutory factor, we apply an abuse of discretion standard and consider whether the decision deviates from the governing legal framework, relies on a material factual error, or is so far afield that no reasonable judicial officer would come to the same conclusion in comparable circumstances. *State v. Plotner*, 290 Kan. 774, 780, 235 P.3d 417 (2010). A ruling falling short in any of those respects amounts to an abuse of discretion.

> "When a district court relies on nonstatutory mitigation to depart from the sentencing guidelines, we similarly look for abuse of discretion and use a three-step analysis. We first ask if the ground the district court has identified constitutes a legally permissible reason to depart. That presents a question of law we review without deference to the district court. If the district court has erred in that way, the factor falls

10

outside the governing legal framework. Second, we ask if the evidence supports the factor in the case at hand. Insufficient evidence would amount to an abuse of discretion for factual error. Finally, we ask if the district court reasonably concluded 'there was a substantial and compelling reason to depart' in the case considering all of the mitigating circumstances. An unreasonable departure would fit the third category entailing abuse of discretion. *State v. Morely*, 312 Kan. 702, 711, 479 P.3d 928 (2021)." *State v. Aranda*, No. 125,432, 2023 WL 3912875, at *2-3 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. ___ (2024).

The grounds the district court identified for granting Gibson a departure to probation are nonstatutory. We find the reasons to be legally permissible, although the reference simply to Gibson's mental health is rather generic. See *State v. Lopez*, 271 Kan. 119, 140-41, 22 P.3d 1040 (2001) (youth and immaturity of judgment in tandem properly considered mitigating factor in considering departure sentence); *State v. Murphy*, 270 Kan. 804, 808-09, 19 P.3d 80 (2001) (family support properly considered as mitigating factor favoring departure sentence); *State v. Grotton*, 50 Kan. App. 2d 1028, 1036-37, 337 P.3d 56 (2014) ("mental-health issues" may be mitigating factor favoring departure sentence). The district attorney's office essentially agrees that the reasons are legally sufficient in the sense they might warrant departure sentences in some cases under some circumstances.

Rather, the district attorney's office contends the reasons are not substantial and compelling in *this* case. At sentencing, Gibson offered evidence supporting the grounds he identified for a departure. The district attorney's office introduced counter evidence, such as Gibson's juvenile court adjudications that continued notwithstanding the social and rehabilitative services extended to him through that system. The district court, of course, heard all of the evidence. We do not have a situation in which the district court misconstrued the governing law or misunderstood the relevant facts.

So the district court abused its judicial discretion only if we can say it ruled in a way no other judge would have in a comparable situation. That is an exceptionally deferential standard: An appellate court should defer if "there is room for reasonable disagreement." *State v. Morley*, 312 Kan. 702, 715, 479 P.3d 928 (2021). The district court's decision indisputably tilts strongly—almost exclusively—toward a punishment geared to rehabilitation rather than to retribution, deterrence, or incapacitation as the other commonly recognized penological objectives of a criminal sentence. See *Graham v. Florida*, 560 U.S. 48, 71, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (identifying "goals of penal sanctions" as "retribution, deterrence, incapacitation, and rehabilitation"); *State v. Ayers*, 309 Kan. 162, 165, 432 P.3d 663 (2019). Although the members of this panel may not have weighed those objectives the same way the district court did in this case, that is not the test for an abuse of discretion. We are guided by an explanation a panel of this court offered in affirming a particularly harsh sentence under an abuse of discretion standard:

> "We similarly cannot find an abuse of discretion in the district court's decision to impose the Jessica's Law punishments consecutively. We doubt we would order initial parole consideration for an 18-year-old defendant, such as Demoss, when he was in his late sixties rather than his mid-forties, recognizing that does not mark a release date but a review to assess maturation, contrition, and rehabilitation preparatory to possible release. But what we would do is not the measure for our review. As a member of this panel has observed: 'Disagreement with the district court—even strong disagreement—doesn't translate to an abuse of discretion. Nor does the district court's lack of sagacity.' *State v. Smith*, No. 112,530, 2015 WL 4580440, at *10 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., concurring in part and dissenting in part). At least some other district courts would impose consecutive sentences in comparable circumstances." *State v. Demoss*, No. 122,127, 2021 WL 935728, at *2 (Kan. App. 2021) (unpublished opinion).

Today, we review a sentence that is in some measure the obverse of the one imposed in *Demoss*. But we apply the same standard of review and come to the same ultimate conclusion: We cannot say the district court has abused its discretion.

12

Affirmed.